IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

|  |  |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> STERLING FOOTWEAR, INC., ALEX RYAN NG, and NG BRANDING, LLC, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Court No.  12-00193 |

## COMPLAINT

The United States of America, through its undersigned attorneys, hereby brings this civil action and alleges the following:

1. This is a civil action to recover unpaid duties and an outstanding monetary penalty pursuant to 19 U.S.C. § 1592 and to collect unpaid duties and mandatory interest pursuant to 19 U.S.C. § 1505.

### JURISDICTION

2. This Court possesses jurisdiction to entertain this action under 28 U.S.C. § 1582.

3. Upon information and belief, defendant, Sterling Footwear is a California corporation registered at 801 South Raymond Avenue #43 Alhambra, CA 91803, with operations at 1501 South Alameda St., Ste. B, Los Angeles, CA 90021-2859.  Defendant, Alex Ryan Ng, is the registered agent for Sterling Footwear at the South Raymond address.

4. Upon information and belief, defendant, Alex Ryan Ng, resides at 4603 Bartlett Avenue, Rosemead, CA 91770-1254.

5. Upon information and belief, defendant, NG Branding, LLC, is a California corporation headquartered at 1501 South Alameda St., Ste. B, Los Angeles, CA 90021-2859. Defendant, Alex Ng, is the registered agent for NG Branding, LLC at the same address.

6. On March 29, 2012, U.S. Customs and Border Protection ("CBP") issued a duty demand to Sterling Footwear, Mr. Ng, and two other representatives of Sterling Footwear that are not named in this complaint pursuant to 19 U.S.C. § 1592(d) for the deprivation of taxes, duties, and fees.

7. On or about June 27, 2012, CBP reissued a demand for penalties under 19 U.S.C. § 1592(a) to Sterling Footwear and Mr. Ng, pursuant to section 1592(b).

8. This action is timely under 19 U.S.C. § 1621 for any action filed on or before July 17, 2012.

FACTS

9. Mr. Ng was the president and sole corporate officer of Sterling Footwear at the time of the entries subject to this case.

10. From July 17, 2007, through August 4, 2009, Sterling Footwear imported 337 entries of footwear under the following incorrect Harmonized Tariff Schedule of the United States ("HTSUS") subheadings: 6402.91.4050, subject to 6% rate of duty; 6402.91.4010, subject to a 6% rate of duty; 6403.99.9031, subject to a 10% rate of duty; 6403.99.9071, duty free; 6402.91.4061 subject to 6% rate of duty; 6402.99.3165, subject to 6% rate of duty; and 9811.00.60, duty free. See Attachment A.

11. On May 19, 2009, Import Specialist ("IS") Linda Simien selected entry number CEB-00042295, filed on June 1, 2009, for physical examination.

12. The entry summary submitted to CBP for entry number CEB-00042295 described the merchandise as 22,800 pairs of rubber tennis shoes using style number 19FLR129W, and

declared the classification under HTSUS subheading 6402.91.4050, subject to 6% rate of duty, with $4,104.00 duty owed. HTSUS subheading 6402.91.4050 covers footwear with uppers over 90% rubber or plastic, but specifically excludes footwear with foxing or foxing-like bands.

13. IS Simien determined that HTSUS subheading 6402.91.4050, subject to 6% rate of duty, was incorrect because the footwear had textile uppers and a foxing-like band.

14. IS Simien determined that the 22,800 pairs of style number 19FLR129W in entry number CEB-00042295 should have been classified under HTSUS subheading 6404.19.5060, subject to 48% rate of duty, with $32,832.00 duty owed. HTSUS subheading 6404.19.5060 covers footwear with outer soles of rubber, plastic, leather or composition leather, uppers of textile materials, and a foxing-like band.

15. Sterling Footwear's misclassification in CEB-00042295 resulted in an actual loss of duty of $28,728.00.

16. After CBP discovered Sterling Footwear's misclassification of style number 19FLR129W in entry number CEB-00042295, IS Benjamin Whitney continued to review Sterling Footwear's 2009 entries as well as Sterling Footwear's classifications from the company's 2007 and 2008 entries.

17. In reviewing Sterling Footwear's classifications used to enter its imported footwear, IS Whitney utilized style information provided by Sterling Footwear on its commercial invoices, numerous samples provided by Sterling Footwear and taken from its 2009 entries, and information regarding each style number on various websites to determine whether the classifications Sterling Footwear used for its imported footwear were correct.

3

18. IS Whitney reviewed the classifications used by Sterling Footwear in the company's 2007, 2008, and 2009 entries. Because CBP did not have samples from Sterling Footwear's 2007 and 2008 entries, IS Whitney based the classification determinations on the samples CBP retained from Sterling Footwear's 2009 entries, samples provided by Sterling Footwear, description of style numbers provided by a Sterling Footwear representative, and publicly available information found on Sterling Footwear's website. Sterling Footwear provided information regarding the assignment of style numbers for specific shoes. This information was particularly useful because the style numbers provided IS Whitney with detailed information about the characteristics of the footwear. From the style numbers, IS Whitney was able to conclude that the style numbers of the footwear used in Sterling Footwear's 2009 entries were the same style numbers used by Sterling Footwear in the company's 2007 and 2008 entries. IS Whitney extrapolated this information and determined that Sterling Footwear similarly misclassified its 2007 and 2008 merchandise in the same way the company misclassified its 2009 entries.

19. On or around June 3, 2009, Senior Import Specialist ("SIS") Barbara Weeks contacted by telephone Sterling Footwear's broker, Scott Kauffman of Seattle Logistics, to inform him that Sterling Footwear misclassified entry number CEB-00042295. In the same telephone call, SIS Weeks informed Mr. Kauffman that Sterling Footwear was required to review all unliquidated entries and correct any incorrect classifications.

20. SIS Weeks also notified Mr. Kauffman that Sterling Footwear must submit post-entry amendments and pay any outstanding duties.

21. On or about July 9, 2009, Scott Kauffman of Seattle Logistics faxed to CBP four post-entry amendments for entry numbers CEB-0004340-0, CEB0004230-3, CEB-0004338-4, and

CEB-0004339-2 on behalf of Sterling Footwear. The post-entry amendments did not include a check for the amount of duty owed.

22. CBP issued two Notices of Action, dated June 4 and July 9, 2009, again informing Sterling Footwear of the correct classifications.

23. On July 17, 2009, the agency received check #2252 in the amount of $62,370.00 from Sterling Footwear. The payment was for the duty owed for entry numbers CEB-0004340-0, CEB0004230-3, CEB-0004338-4, and CEB-0004339-2. The above entry numbers correspond to the entry numbers listed on the July 9, 2009 Notice of Action.

24. On July 29, 2009, several import specialists met with representatives of Sterling Footwear, Ms. Nancy Ng and Ms. Janet Huynh, as well as Mr. Kauffman to discuss Sterling Footwear's past misclassifications.

25. At the July 29, 2009 meeting, the import specialists provided informed compliance handouts to the Sterling Footwear representatives.

26. At the July 29, 2009 meeting, the agency again requested that Sterling Footwear examine all of its unliquidated entries and correct any misclassifications by submitting post-entry amendments.

27. Sterling Footwear did not file any post-entry amendments with the exception of the four post-entry amendments for entry numbers CEB-0004340-0, CEB0004230-3, CEB-0004338-4, and CEB-0004339-2 mentioned in paragraph 23.

28. Between September 23, 2009 and December 21, 2009, CBP issued approximately 36 Notices of Action for rate advances, which in this case are notifications of an action taken by CBP to change the classification of the entered footwear that includes the correct HTSUS

subheading(s), and five Notices of Action informing Sterling Footwear of the legal date of liquidation.

29. Forty-six entries were reliquidated by the agency. Sterling Footwear protested these 46 reliquidated entries, claiming the reliquidations were not made within 90 days of the date of issuance of the notice of original liquidation as required by statute. Of the protested entries, the agency accepted Sterling Footwear's procedural argument on 17 protested entries as the reliquidations were untimely. The agency excluded the corresponding amount of duty from the 19 U.S.C. § 1592(d) duty demand.

30. Sterling Footwear submitted 41 entries in 2007 all under the incorrect HTSUS subheading 6402.91.4050, subject to 6% rate of duty.

31. All of Sterling Footwear's 41 entries in 2007 were misclassified resulting in a total loss of revenue of $427,774.06. *See* Attachment A.

32. Sterling Footwear made 197 entries in 2008 all under the following incorrect HTSUS subheadings 6402.91.4010, subject to 6% rate of duty; 6402.91.4050, subject to 6% rate of duty; 6403.99.9031, subject to 10% rate of duty; and 6403.99.9071, duty free.

33. All of Sterling Footwear's 197 entries in 2008 were misclassified resulting in a total loss of revenue of $2,871,152.11. *See* Attachment A.

34. Sterling Footwear made 99 entries in 2009 all under the following incorrect HTSUS subheadings 6402.91.4050, subject to 6% rate of duty; 6402.91.4010, subject to 6% rate of duty; 6402.91.4061, subject to 6% rate of duty; 6402.99.3165, subject to 6% rate of duty; and 9811.00.60, duty free.

35. All of Sterling Footwear's 99 entries in 2009 were misclassified resulting in a total loss of revenue of $1,890,654.80. *See* Attachment A.

36. On March 29, 2012, CBP issued a duty demand to Sterling Footwear, Mr. Ng, and two other representatives of Sterling Footwear that are not named in this complaint pursuant to 19 U.S.C. § 1592(d) for the deprivation of taxes, duties, and fees. The above parties did not respond to the duty demand.

37. On March 29, 2012, CBP issued a prepenalty notice to Sterling Footwear, Mr. Ng, and two other representatives of Sterling Footwear that are not named in this complaint pursuant to 19 U.S.C. § 1592(a), tentatively determining gross negligence as the level of culpability. The above parties did not respond to the prepenalty notice.

38. On April 9, 2012, CBP issued a penalty notice to Sterling Footwear, Mr. Ng, and two other representatives of Sterling Footwear that are not named in this complaint pursuant to 19 U.S.C. § 1592(a) determining gross negligence as the level of culpability. The above parties did not respond to the penalty notice.

39. On June 20, 2012, CBP reissued a prepenalty notice to defendants to include the level of culpability of negligence in the alternative. Defendants did not respond to the prepenalty notice.

40. On June 27, 2012, CBP reissued a penalty notice to defendants to include the level of culpability of negligence in the alternative. Defendants did not respond to the penalty notice.

41. With the exception of the payment for duties owed on entry numbers CEB-0004340-0, CEB0004230-3, CEB-0004338-4, and CEB-0004339-2 in the amount of $62,370.00, defendants have made no payments on any outstanding amounts owed to the United States of America.

42. Mr. Ng engaged in a pattern of illegal conduct whereby he knowingly participated in a scheme to avoid millions of dollars in duties by entering Sterling Footwear's merchandise

under incorrect classifications through the use of at least eight brokers in a period of two years. Sterling Footwear directed various brokers to enter its merchandise under certain classifications. Sterling Footwear sought to avoid detection of the misclassifications by selecting brokers around the country and had them enter the goods remotely through Los Angeles/Long Beach Seaport and Los Angeles International Airport. Some of the brokers reported that they had questioned the correctness of these classifications, but Sterling Footwear refused to change the classifications. Subsequently, Sterling Footwear terminated broker services with those brokers who questioned Sterling Footwear's classifications.

43. Mr. Ng engaged in a pattern of illegal conduct whereby he knowingly participated in a scheme to avoid millions of dollars in duties by entering the same merchandise under incorrect classifications through the use of multiple companies. Once CBP made inquiries regarding a company's questionable importation practices and potential violations, Mr. Ng, the sole corporate officer, ceased operations and recommenced importation under the name of another corporate entity. Sterling Footwear's successor company, NG Branding, LLC, had the following similarities to Sterling Footwear: same address, same employees, same board member (Alex Ng), same telephone number, same clients, same suppliers, and same merchandise.

## COUNT I

44. The allegations contained in paragraphs 1 through 43 are restated and incorporated by reference.

45. As a result of defendants' misclassification of 337 subject entries of footwear, defendants owe, pursuant to 19 U.S.C. § 1592(d), unpaid duties in the amount of $1,666,824.85.

8

46. The agency issued a 19 U.S.C. 1592(d) duty demand to Sterling Footwear, Mr. Ng, Ms. Huynh, Ms. Ng, and its surety, International Fidelity, for $1,666,824.85. To date, Sterling Footwear, and Mr. Ng have not paid any amount towards the 19 U.S.C. § 1592(d) duty demand. To date, International Fidelity has paid $100.000.00 towards the 19 U.S.C. § 1592(d) duty demand.

47. Although the agency calculated the actual loss of revenue as $2,003,080.12, the agency deducted $336,255.27 from the actual loss of revenue when calculating the amount of the Section 1592(d) duty demand. The $336,255.27 was the amount resulting from the agency's decision to grant 17 protests filed by Sterling Footwear. *See* Attachment B. Thus, the United States claims $1,666,824.85 in unpaid duties, even though the actual loss of revenue totaled $2,003,080.12.

## COUNT II

48. The allegations contained in paragraphs 1 through 43 are restated and incorporated by reference.

49. Defendants' misclassification of 337 subject entries of footwear was the result of gross negligence because defendants' misrepresentation of the footwear's components involved a wanton disregard for the relevant facts and indifference to or disregard for statutory obligations.

50. Defendants' grossly negligent violations resulted in the actual loss of revenue of $2,003,080.12, for the 337 entries made on or after July 17, 2007, for which the statute of limitations has not yet expired. *See* Attachment A.

51. Defendants' grossly negligent violations resulted in the potential loss of revenue of $3,186,500.85, for the 337 entries made on or after July 17, 2007, for which the statute of

limitations has not yet expired. The actual loss of revenue is the calculation of duties (including marking, antidumping, or countervailing), fees, and taxes due on liquidated entries. In contrast, the potential loss of revenue is the calculation of duties, fees, and taxes due on unliquidated entries for which CBP had issued notices of action preventing liquidation based upon defendants' misclassifications. In addition, a potential loss of duty exists where CBP discovers the violation and corrects the entry to reflect liquidation at the proper classification and value. The total loss of revenue is the sum of the actual loss of revenue and the potential loss of revenue used to arrive at the appropriate assessment and disposition amounts in a case. *See* Attachment A.

52. Defendants' grossly negligent violations resulted in a total loss of revenue of $5,189,580.97, for the 337 entries made on or after July 17, 2007, for which the statute of limitations has not yet expired. *See* Attachment A.

53. Defendants are therefore liable for a penalty for gross negligence in the amount of $20,758,323.88, which represents the lesser of the domestic value of the subject entries or four times the amount of the total loss of revenue (actual and potential) upon the subject footwear. Since $20,758,323.88, four times the total loss of revenue (4 x $5,189,580.97), represents the lesser of $22,604,574.01, the domestic value of the subject entries, defendants are liable for a penalty for gross negligence in the amount of $20,758,323.88.

COUNT III

54. The allegations contained in paragraphs 1 through 43 are restated and incorporated by reference.

10

55. If defendants' violations were not the result of gross negligence, then they were the result of negligence because defendants did not exercise reasonable care when they misclassified the footwear.

56. Defendants' negligent violations resulted in the total loss of revenue of $5,189,580.97, for the 337 entries made on or after July 17, 2007, for which the statute of limitations has not yet expired. *See* Attachment A.

57. Defendants' negligent violations resulted in the actual loss of revenue of $2,003,080.12, for the 337 entries made on or after July 17, 2007, for which the statute of limitations has not yet expired. *See* Attachment A.

58. Defendants' negligent violations resulted in the potential loss of revenue of $3,186,500.85, for the 337 entries made on or after July 17, 2007, for which the statute of limitations has not yet expired. *See* Attachment A.

59. Defendants are therefore liable for a penalty for negligence in the amount of $10,379,161.94, which represents the lesser of the domestic value of the subject entries or two times the amount of the total loss of revenue upon the subject footwear. Because $10,379,161.94, two times the total loss of revenue (2 x $5,189,580.97), represents the lesser of $22,604,574.01, the domestic value of the subject entries, defendants are liable for a penalty for negligence in the amount of $10,379,161.94.

WHEREFORE, the United States respectfully requests that the Court enter judgment in its favor against defendants as follows:

On Count I, against defendants jointly and severally for unpaid duties pursuant to 19 U.S.C. § 1592(d) in the amount of $1,666,824.85.

11

On Count II, against defendants jointly and severally for civil penalties for gross negligence pursuant to 19 U.S.C. § 1592(c)(2) in the amount of $20,758,323.88, plus lost revenue minus the amount determined in the protests granted by CBP, for an amount of $1,666,824.85 pursuant to 19 U.S.C. § 1592(d) (less the $100,000 already paid by their surety), plus prejudgment interest upon the lost revenue pursuant to 19 U.S.C. § 1505, and

On Count III, against defendants jointly and severally for civil penalties for negligence pursuant to 19 U.S.C. § 1592(c)(3) in the amount of $10,379,161.94, plus lost revenue minus the amount determined in the protests granted by CBP, for an amount of $1,666,824.85 pursuant to 19 U.S.C. § 1592(d) (less the $100,000 already paid by their surety), plus prejudgment interest upon the lost revenue pursuant to 19 U.S.C. § 1505; and

Such other and future relief as this Court deems appropriate.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

CLAUDIA BURKE
Assistant Director

12

OF COUNSEL:
MEREDITH A. JOHNSON
Staff Attorney
U.S. Customs and Border Protection
Office of the Associate Chief Counsel
Long Beach, CA 90802

MICHAEL D. PANZERA
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel:    (202) 305-7587
Fax:    (202) 353-7988

July 16, 2012

Attorneys for Plaintiff

13