IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON

| | |
|---|---|
| UNITED STATES, | ) |
| Plaintiff, | ) |
| v. | ) Court No. 12-00193 |
| STERLING FOOTWEAR, INC., ALEX RYAN NG, and NG BRANDING, LLC, | ) |
| Defendants. | ) |

## **DEFENDANT ALEX NG'S MOTION FOR SUMMARY JUDGMENT**

THOMAS A. FASEL, ESQ.
FASEL LAW
610 Newport Center Drive, Ste 810
Newport Beach, CA 92660
Telephone:     (949) 706-3188
Facsimile:     (949) 606-7002
taf@fasellaw.com

Attorneys for Defendants Sterling
Footwear, Inc., NG Branding, LLC
and Alex Ryan Ng

DATED:  November 12, 2015

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................. 1

**ISSUES PRESENTED** ....................................................................................................... 2

**STATEMENT OF THE CASE** .................................................................................…...... 2

I.      **Nature of the Case** ............................................................................................... 2

II.    **Statement of Facts** .............................................................................................. 3

A.    **Sterling Footwear** .............................................................................................. 3

B.    **NG Branding** ....................................................................................................... 4

C.    **Alex Ng** ................................................................................................................ 4

**SUMMARY OF ARGUMENT** .......................................................................................… 5

**ARGUMENT** .................................................................................................................…... 5

I.      **Legal Standard** .................................................................................................... 5

A.    **For Summary Judgment** .................................................................................... 5

B.    **For Violation of 19 U.S.C. § 1952(a)(1)(A)** ...................................................... 6

II.    **As a Matter of Law, Mr. Ng could not have violated 19 U.S.C. § 1952** ...................... 6

A.    **As a Matter of Law, Mr. Ng could not have entered Merchandise into The United States** .................................................................................................... 7

B.    **As a Matter of Law, Mr. Ng could not have "introduced" Merchandise Into the United States** ..................................................................................... 8

i.     The Record definitely establishes no specific, relevant and admissible Evidence exists establishing Mr. Ng "personally" committed any "threshold" act "introducing" any merchandise into the United States ..............................................................................................…….. 12

a.    *The Depositions* ...........................................................................…...... 12

Nancy Ng .............................................................................................…… 13

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

Janet Huynh ……………………………………………………...……… 14

Fernanda Calvo ……………………………………………………...… 14

Ty Ngo ……………………………………………………………...…… 15

Alex Ng (individually) ……………………………………………...…… 15

Sterling Footwear, Inc. …………………………………………...……… 16

Ng Branding LLC ……………………………………...……...……… 17

b.   *The Written Discovery Responses and Documents Produced* ……………….......….. 18

Mr. Ng's Discovery …………………………………………………...……… 18

Sterling and Ng Branding's Discovery ……………………………………… 20

The Government's Document Production …………………………….....…… 22

The Government did not Supplement its Disclosures and
Responses ………………………………………………………….…… 23

ii.   The Evidence establishes Mr. Ng's acts are not within the
Scope of Liability as set out by Trek II and are clearly
distinguishable from that of Mr. Shadadpuri ………………………………… 24

a.   *Personal Acts also must "bring Goods to the Threshold of
the Process of Entry" pursuant to Trek II* ………………………………….… 26

b.   *The only alleged Facts provided by the Government are
all totally irrelevant to the proper Analysis, unsubstantiated
and mostly false* ……………………………………………………….… 27

C.   **Why was Mr. Ng sued in his Individual Capacity** ................................................ 30

III.   **As a Matter of Law, Mr. Ng cannot be Liable for the
Acts of the Entities under the Theories of Aiding and
Abetting, Piercing the Corporate Veil and Alter Ego** ………………………….... 35

IV.   **As a Matter of Law, Mr. Ng cannot be Liable for
Alleged unpaid Customs Duties and Civil Penalties
Pursuant to 19 U.S.C. 1592(c) and (d)** …………………………….... 36

**CONCLUSION** ……………………………………………………………...… 37

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

**CERTIFICATE OF COMPLIANCE** …………………………………………....… 38

**CERTIFICATE OF SERVICE** …………………………………….............… 39

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

# TABLE OF AUTHORITIES

CASES:

Anderson v. Liberty Lobby
    477 U.S. 242 (1986) …………………………………………………….…… 6

Blue Lake Forest Products, Inc. v. United States
    75 Fed. Cl. 779 (2007) …………………………………………………….… 32

Celotex Corp. v. Catrett
    477 U.S. 317 (1986) …………………………………………………….. 6

D.L. Auld Co. v. Chroma Graphics Corp.
    714 F.2d 1144 (Fed. Cir. 1983) …………………………………………...… 6

Holley v. United States
    124 F.3d 1462 (Fed. Cir. 1997) …………………………………….… 35, 36

Litton Indus. Prod. Inc. v. Solid State Sys. Corp.
    755 F.2d 158 (Fed. Cir. 1985) ………………………………………..….. 6

Mingus Constructors, Inc. v. United States
    812 F.2d 1387 (Fed. Cir. 1987) ………………………………………….. 6

United States v. Hitachi America, Ltd.
    172 F.3d 1319 (Fed. Cir. 1999) ……………………………………….. 7, 9, 35, 36

United States v. Matthews
    533 F. Supp2d 1307 (Ct. Int'l Trade 2007) …………………………………….. 6

United States v. Trek Leather ("Trek I")
    724 F.3d 1331 (Fed. Cir. 2013) …………………………………………. 7

United States v. Trek Leather, Inc. ("Trek II")
    767 F.3d 1288 (Fed. Cir. 2014) ……………………………… 5-12, 21, 22, 24-30

STATUTES & RULES:

19 U.S.C. § 1505 …………………………………………………..…………. 1

19 U.S.C. § 1592 ……………………………………...…… 1-3, 5-10, 23, 24-27, 29, 34-37

USCIT Rule 6 …………………………………………………………….. 23

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

USCIT Rule 7 …………………………………………………………………….. 20

USCIT Rule 8 …………………………………………………………………….. 35

USCIT Rule 36 ………………………………………………………………….. 19, 20

USCIT Rule 37 ……………………………………………………………...……….. 20

USCIT Rule 56 ……………………………………………………...…………….. 1, 5, 6, 12, 19, 30

OTHER AUTHORITIES:

Merriam-Webster, *Definition of Threshold* (2015),
    *available at http://www.merriam-webster.com/dictionary/threshold* …………. 27

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No.     12-00193 |
| | ) | |
| STERLING FOOTWEAR, INC., | ) | |
| ALEX RYAN NG, and NG BRANDING, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT ALEX NG'S MEMORANDUM OF LAW AND POINTS OF
AUTHORITIES IN SUPPORT OF MOTION TO FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Pursuant to U.S. Court of International Trade Rule 56, Defendant Alex Ryan Ng ("Mr. Ng") submits this memorandum of law and points and authorities in support of its motion for summary judgment. For the reasons set forth below, Mr. Ng submits that there is no genuine dispute as to any material fact relating to Mr. Ng and Mr. Ng is entitled to judgment as a matter of law.

The Complaint the United States filed in this action alleges that the Alex Ng is liable for the payment of lost duties and penalties pursuant to the authority contained in 19 U.S.C. § 1505 and 19 U.S.C. § 1592. For the reasons set forth more fully below, the claim has been wrongfully filed against Alex Ng, a non-party to the alleged facts described in the Complaint, alleged to give rise to liability.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

<u>**ISSUES PRESENTED**</u>

1.      Whether defendant Alex Ryan Ng can be held liable pursuant to 19 U.S.C. §

1592(a)(1)(A) for negligently or grossly negligently entering, introducing, or attempting to enter

or introduce, any merchandise into the commerce of the United States by means of a materially

false or omitted document, electronically transmitted data, written or oral statement, act or

omission, because of (a) his status as a majority shareholder in the importers of record, Sterling

Footwear, Inc. and/or Ng Branding, LLC, (b) his agent for service of process status for the

entities, (c) his owning and operating of more than one company and (d) his companies' use of

multiple customs brokers?

2.      Whether Mr. Ng can be held personally liable for the unpaid customs duties and civil

penalties pursuant to 19 U.S.C. 1592(c) and (d) if, as a matter of law, he cannot be held

personally liable under 19 U.S.C. § 1592(a)(1)(A)?

<u>**STATEMENT OF THE CASE**</u>

**I.      <u>Nature Of The Case</u>**

The United States, the plaintiff in this matter, seeks to wrongfully recover customs duties

and civil penalties pursuant to 19 U.S.C. § 1592(a)(1)(A) from defendant Alex Ryan Ng

individually as a result of the alleged misclassifications by the importers of record, defendants

Sterling Footwear, Inc. and Ng Branding, LLC, because of (1) his status as an agent for service

of process, majority owner and officer/member of the limited liability entities, (2) the entities use

of multiple customs brokers, and (3) his ownership of two companies that have conducted

entries.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

## II.     Statement of Facts

On or about July 16, 2012, the United States brought this action against Defendants Sterling Footwear, Inc. ("Sterling"), a California corporation, NG Branding, LLC ("Ng Branding"), a California limited liability company, and Alex Ng (Mr. Ng) for loss of duties and negligent or grossly negligent misclassification of goods by Sterling and NG Branding pursuant to 19 U.S.C. § 1592(a)(1)(A).  Mr. Ng is an officer for Sterling and the managing member of Ng Branding.  (Attached hereto as Exhibit 'Y' is the Declaration of Alex Ng ("Exhibit Y") ¶ 1.)

### A.     Sterling Footwear

Between 2007 to 2009, Sterling was in the business of procuring manufacturing plants in Asia capable of producing footwear and importing the footwear into the United States on behalf of its buyers/clients.  Between approximately 2007 and 2009, Sterling imported footwear into the United States under certain Harmonized Tariff Schedule of the United States ("HTSUS" or "HTS") subheadings.  (Complaint ¶¶ 9-43.)  On or about May 2009, United States Customs and Border Protection ("Customs" or "CBP") began to re-evaluate and examine Sterling's 2007-2009 entries and decided to challenge Sterling's classifications under HTSUS.  Customs concluded in 2009 that Sterling's 2007-2009 entries were misclassified under HTSUS and should have been classified under a HTSUS subheading, which required a 48% rate of duty.  On or about June 2009, Customs informed Sterling of the alleged misclassifications and conveyed its intent to "help Sterling".  Sterling agreed to meet with Customs and review its entries in an attempt to come to a resolution regarding the alleged misclassifications.  (Id.)  Sterling did allege, and continues to allege, that all the 2007-2009 entries by Sterling were correctly classified pursuant to the HTSUS.  (Exhibit Y ¶ 9.)

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

**B. NG Branding**

On February 13, 2009, 3 months before Customs began to re-evaluate Sterling's entries and 4 months before Customs contacted Sterling regarding the alleged misclassifications, Mr. Ng formed the entity Ng Branding. (Exhibit Y ¶ 8.) NG Branding was formed so that it could take on the license for Robin's Jeans. Ng Branding was also in the business of manufacturing footwear in Asia and the importation of the footwear into the United States on behalf of its buyers/clients. (Id.)

**C. Alex Ng**

At all times during his course as an officer of Sterling and managing member of Ng Branding, Mr. Ng's primary role was to develop business for the entities, including the retainer of manufacturing plants in Asia sufficient to produce the footwear and the establishment and retainer of buyers in the United States to order/purchase the footwear. (Exhibit Y ¶ 7.) Sterling and Ng Branding's issues in dealing with Customs, importation into the United States, entry of goods and classification of goods were at all times delegated to and handled by staff in the production department at Sterling and Ng Branding. (Exhibit Y ¶¶ 3-4.) At no time throughout the course of his position at Sterling or Ng Branding, did Mr. Ng make decisions relating to, approving of, authorizing, or in any way directing the classification of goods with Customs. (Exhibit Y ¶¶ 5-7, 10-12.) Nor did Mr. Ng ever directly or indirectly communicate in anyway with the customs brokers or Customs officials regarding the imports. (Id.) Instead, Sterling and Ng Branding's staff would hire customs brokers to perfect the entries of the footwear into the United States and specifically to classify the goods. At no time did Mr. Ng import goods or classify goods in his individual capacity as the importer or record, nor is he a licensed customs broker. (Id.)

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

<u>**SUMMARY OF ARGUMENT**</u>

The only theory upon which the Complaint alleges Defendant Alex Ryan Ng is liable to the government is pursuant to 19 U.S.C. § 1592(a)(1)(A). A person may be liable pursuant to section 1592(a)(1)(A) he or she actually does or attempts to enter or introduce merchandise into the United States by means of supplying false information to the government through negligence, gross negligence or fraud. The government has only alleged Mr. Ng was negligent or grossly negligent, not fraudulent. In order to be liable for entering or attempting to enter merchandise pursuant section 1592(a)(1)(A), the defendant must be the importer of record or an agent designated in writing (customs broker). Here, Mr. Ng was never the importer of record or a customs agent. In order to be liable for introducing or attempting to introduce merchandise pursuant to section 1592(a)(1)(A), one must personally perform a negligent or grossly-negligent act at the threshold of entry, such as providing critical documents or moving the goods into US Custom's custody. <u>United States v. Trek Leather, Inc.</u>, 767 F.3d 1288, 1295 (Fed. Cir. 2014) <u>cert. denied sub nom.</u> <u>Shadadpuri v. United States</u>, 37 ITRD 1068, 135 S. Ct. 2350, 192 L. Ed. 2d 143 (2015) (hereafter "<u>Trek II</u>"). Here, all the evidence, including the pleadings, the documents produced, the written discovery responses and deposition testimony, only establishes Mr. Ng never personally performed any act that would subject him to liability under the introducing language of section 1592(a)(1)(A). <u>Trek Leather, Inc.</u>, 767 F.3d at 1298-3000.

<u>**ARGUMENT**</u>

I.    <u>**Legal Standard**</u>

    A.    **For Summary Judgment**

Summary judgment is appropriate where there is no genuine issue of material fact requiring a trial and the moving party is entitled to judgment in its favor as a matter of law. <u>See,</u>

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

e.g., USCIT R. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 250 (1986); <u>Mingus Constructors, Inc. v. United States</u>, 812 F.2d 1387, 1390 (Fed. Cir. 1987). While it is true that in considering a motion for summary judgment, the evidence must be viewed, and inferences drawn, in a light most favorable to the non-moving party, <u>Litton Indus. Prod. Inc. v. Solid State Sys. Corp.</u>, 755 F.2d 158, 163 (Fed. Cir. 1985); <u>D.L. Auld Co. v. Chroma Graphics Corp.</u>, 714 F.2d 1144, 1146 (Fed. Cir. 1983), when faced with a motion for summary judgment, the non-moving party may not rely merely on allegations or denials in its own pleading, but is required to come forward with relevant, admissible, and specific evidence demonstrating a genuine issue for trial. USCIT R. 56(e)(2).

   **B.      For Violation of 19 U.S.C. § 1952(a)(1)(A)**

Pursuant to section 1592, it is unlawful for any person to enter or introduce any merchandise into the United States by means of any document, written or oral statement, or act that is materially false due to fraud, gross negligence, or negligence. 19 U.S.C. § 1592(a)(1)(A); <u>United States v. Matthews</u>, 533 F. Supp. 2d 1307, 1311 (Ct. Int'l Trade 2007).   For a "person" to "enter" merchandise pursuant to 19 U.S.C. § 1592(a)(1)(A), the "person" must be an importer of record or an agent designated in writing (customs broker).  <u>Trek II,</u> 767 F.3d at 1295.  For a "person" to "introduce" merchandise pursuant to 19 U.S.C. § 1952(a)(1), the "person" must "personally [commit] a violation" at the threshold of the process of entry.  <u>Trek II,</u> 767 F.3d at 1299.

**II.      <u>As a Matter of Law, Mr. Ng could not have violated 19 U.S.C. § 1952</u>**

19 U.S.C. § 1952(a)(1)(A) imposes liability on persons in two different ways.  The first way liability is imposed is if a person, by "fraud, gross negligence or negligence", enters or attempts to enter merchandise into the United States.  The second way liability is imposed is if a

6

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

person, by "fraud, gross negligence or negligence", introduces or attempts to introduce

merchandise into the United States.

**A.      As a Matter of Law, Mr. Ng could not have entered Merchandise into the United States**

The recent Federal Circuit Court of Appeals opinions in the matter of United States v

Trek Leather, clearly dictate that Mr. Ng could not have entered merchandise into the United

States and, as a matter of law, cannot be held liable for such.  767 F.3d at 1295.  The Trek

Leather court reaffirmed the holding that a "person" held liable for entering merchandise under §

1952, must be a "the importer of record or an agent designated in writing".  Id; United States v.

Trek Leather, 724 F.3d 1331, 1335-40 (Fed. Cir. 2013) (hereafter "Trek I"); United States v.

Hitachi America, Ltd 172 F.3d 1319, 1337-38 (Fed. Cir. 1999).  Here, Mr. Ng was never "the

importer of record or agent designated in writing" for any of the alleged misclassifications

named in the Complaint.  The importer of record for all the relevant entries to this lawsuit was

either Sterling or Ng Branding.  (See generally Complaint.)  Mr. Ng is merely a majority

shareholder and officer in Sterling and a managing member in Ng Branding.  Nevertheless, even

if the Federal Circuit had not held that a person entering or attempting to enter goods was not

limited to importers of record or agents designated in writing, Mr. Ng still could not be held

liable for any of the subject entries as he never personally performed any act remotely related to

entering any merchandise alleged to have been misclassified in the Complaint.  In fact, Mr. Ng,

in his individual capacity, has never made an entry in the United States and the government has

in its possession no evidence, admissible or otherwise, to the contrary. The government admits in

its response to Mr. Ng's Request for Admission No. 2 that Mr. Ng is not a customs broker.  The

government fails to properly admit or deny Admission No. 1, that Mr. Ng was not the importer

of record for the alleged misclassifications, providing a meritless objection, and thus admitting he was not the importer of record. (Exhibit I, p. 28.) As such, as a matter of law, Mr. Ng cannot be held liable for <u>entering</u> any merchandise by way of gross negligence or negligence.

**B.** **As a Matter of Law, Mr. Ng could not have "introduced" Merchandise into the United States**

The Federal Circuit Court of Appeals recently examined when a person may be found liable for introducing or attempting to introduce merchandise into the United States. <u>Trek II</u>, 767 F.3d 1288. In <u>Trek II</u>, the government filed a complaint in the United States Court of International Trade, alleging a violation of 19 U.S.C. § 1592(a)(1). The complaint named Trek Leather, Inc., and its owner, sole shareholder and president, Harish Shadadpuri ("Shadadpuri"), as defendants. <u>Trek II</u>, 767 F.3d at 1291.

The complaint further alleged that Trek Leather and Shadadpuri "entered or introduced or attempted to enter or introduce men's suits into the commerce of the United States" by means of "false acts, statements and/or omissions" that "understated the dutiable value of the imported merchandise". <u>Id</u>. The complaint contained separate counts for fraud, gross negligence and negligence. Trek Leather was the importer of record on the subject entries. Shadadpuri was never the importer of record. <u>Id</u> at 1291-92. Trek Leather hired a customs broker and the broker prepared and submitted the entry summary forms to CBP, on Trek Leather's behalf, for entry into the United States. The customs broker prepared and submitted the entry summaries based on papers he received from Shadadpuri personally. <u>Id</u> at 1293, 1299.

Shadadpuri would often personally fax the relevant papers to the customs broker to facilitate entry. <u>Id</u> at 1293. The government sought summary judgment of liability of both defendants, for fraud, gross negligence and negligence. <u>Id</u> at 1291, 1293. In their opposition to

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

the government's motion for summary judgment, the defendants did not dispute Trek Leather's liability for negligence or gross negligence. Id at 1294. Instead, defendants argued that the charge for fraud should be dismissed because the evidence showed no intent on the part of Trek or Shadadpuri that the entry documentation to be prepared by the customs broker would be improper. Further, the defendants argued that where there was no fraud, Shadadpuri could not be liable for negligent or grossly negligent aiding and abetting. Id. The defendants relied on United States v. Hitachi America, Ltd., 172 F.3d 1319, 1336-38 (Fed. Cir. 1999), in which the Federal Circuit held that liability for aiding or abetting under paragraph (B) of section 1592(a)(1) requires that a person have certain knowledge regarding the unlawfulness under paragraph (A) of the action being aided or abetted. Interestingly, defendants did not separately argue that Shadadpuri could not be liable directly for violating subparagraph (A). Trek II, 767 F.3d at 1294.

The Court of International Trade granted the government's motion for summary judgment of liability of both defendants for gross negligence. Id. Shadadpuri alone appealed to the Federal Circuit (Trek I) challenging his personal liability under section 1592(a)(1)(A) as he never entered the subject goods. Trek II, 767 F.3d at 1295. A panel of the Federal Circuit reversed the Court of International Trade's decision granting the government's motion for summary judgment, finding that Shadadpuri could not be liable for section 1592(a)(1)(A) for "entry" because he was never personally the importer of record. Trek II, 767 F.3d at 1295. The Federal Circuit then granted the government's request for rehearing of the matter. Sitting en banc, the Federal Circuit then reviewed the Court of International Trade's grant of summary judgment de novo. Id.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

In its opinion, the Court in <u>Trek II</u> decided when a person's actions come within the "enter, introduce, or attempt to enter or introduce" language of section 1592(a)(1)(A). <u>Id</u>.

> [T]he question before us is simply whether [Shadadpuri] engaged in any conduct respecting any of the suit shipments that constitutes, entering, introducing, or attempting to enter or introduce merchandise into the United States commerce under section 1592(a)(1)(A). <u>Trek II</u>, 767 F.3d at 1296.

First, the <u>Trek II</u> court found that Shadadpuri is a "person" under section 1592. <u>Id</u>. Next, the court addressed the issue of Shadadpuri's acts and whether such would be sufficient to hold him personally liable. <u>Trek II</u>, 767 F.3d at 1297-1300. The court noted that Shadadpuri did not enter or attempt to enter the merchandise at issue, and turned its inquiry solely to the "introduce" language of section 1592(a)(1)(A). <u>Id</u>. Relying on <u>United States v. 25 Packages of Panama Hats</u> (1931) 231 U.S. 358, the <u>Trek II</u> court found that "introduce" means:

> [A]ctions completed before any formal entry filings made to effectuate release of imported goods . . . the term covers <u>actions that bring goods to the **threshold** of the process of entry</u> by **moving goods into CBP custody** in the United States and **providing critical documents** (such as invoices indicating value) for use in the filing of papers for a contemplated release into the United States commerce even if no release ever occurs. 767 F.3d at 1299 (emphasis added).

The <u>Trek II</u> court then noted that Shadadpuri's actions came within the understanding of the "introduce" language of section 1592(a)(1)(A) as Shadadpuri " 'caused the shipments of the imported merchandise to be transferred'" to Trek Leather by " 'direct[ing]' the customs broker to make the transfer" and that Shadadpuri "[h]imself" and through his aides, "sent manufacturers' invoices to the customs broker for the broker's use in completing the entry filings to secure release of the merchandise from CBP custody into the United States commerce." <u>Id</u>. The court noted that "[b]y this activity, [Shadadpuri] did <u>everything short of the final step</u> of preparing the CBP Form 7501s and submitting them and other required papers to make formal entry." (Emphasis added.) The court then made sure to limit its opinion to acts personally performed by

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

the individual in introducing merchandise and clarified "[w]e hold him liable because he

**personally committed a violation** of subparagraph (A)" and stated "**[w]e do not hold Mr. Shadadpuri liable because of his prominent officer or owner status in a corporation that committed a subparagraph (A) violation**". Id (emphasis added).

Here, Mr. Ng never personally introduced, or attempted to introduce, any merchandise into the United States, let alone did he personally do "everything short of the final step" of entry, as clarified by the court in Trek II. Although Trek II concisely sets out the law defining when an individual can be found to have "introduced" merchandise, limiting it to instances where the individual personally participated in the threshold of the entry process, the facts here are inapposite to that of Shadadpuri. (1) Mr. Ng never personally made any determination as to the harmonized tariff schedule ("HTS") classification that should be applied to any merchandise subject to this lawsuit. (Exhibit Y ¶¶ 4-6.) (2) Mr. Ng created specific departments at Sterling and Ng Branding, and hired qualified individuals for those departments, dedicated to making correct and accurate HTS classifications. (Id.) (3) Mr. Ng hired licensed customs brokers to advise Sterling and Ng Branding as to the correct HTS classifications. (4) Mr. Ng relied on his managers at Sterling and Ng Branding to make correct HTS classification determinations, with the help of customs brokers, and was in no way involved in the classification determinations. (5) Mr. Ng never prepared or submitted any documentation to any customs broker or Customs for use in entering the subject merchandise. (6) Mr. Ng never instructed any employee on how to prepare or submit any documentation to any customs broker or Customs for use in entering the subject merchandise. (7) Mr. Ng never directly or indirectly met, communicated with or instructed any of Sterling or Ng Branding's customs brokers regarding the entry of the subject merchandise. (Exhibit Y ¶¶ 4-6, 10-12.) (8) After Customs began its investigation, Mr. Ng relied

on his former counsel's opinion that Sterling and Ng Branding's entries were properly classified. (Exhibit Y ¶ 9.) As Mr. Ng performed no act that would constitute "introducing" merchandise into the United States, there exists no evidence, let alone specific, admissible and relevant evidence, "demonstrating a genuine issue for trial". USCIT R. 56(e)(2).

    i. <u>The Record definitely establishes no specific, relevant and admissible Evidence exists establishing Mr. Ng "personally" committed any "threshold" act "introducing" any merchandise into the United States.</u>

<u>Trek II</u> established that for an individual to be liable under the "introducing" language of section 1592(a)(1)(A), the person must have "personally committed" acts that bring goods to the "threshold" of entry, such as preparing documentation to be given to customs brokers or Customs for entry. 767 F.3d at 1297-1300. Here, the deposition testimony, the written discovery responses and the documents produced all are wholly devoid of any specific, relevant and admissible evidence that Mr. Ng "personally committed" acts that brought the subject merchandise to the "threshold" of entry:

    a. *The Depositions*

The government deposed Sterling and Ng Branding employees Nancy Ng, Janet Huynh, Fernanda Calvo and Ty Ngo, as well as, Mr. Ng in his individual capacity and as a 30(b)(6) witness on behalf of Sterling and Ng Branding. All of the deposition testimony confirms that Mr. Ng did not "personally" commit any act that would be considered "introducing" any merchandise into the United States pursuant to <u>Trek II</u>.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

<u>Nancy Ng</u>

On November 17, 2014, the government deposed Nancy Ng ("Ms. Ng").[1] (A true and correct copy of the Deposition Transcript of Nancy Ng is attached as Exhibit 'A' to the Index to Appendix (hereafter "Nancy Dep.").) Ms. Ng was hired by Sterling in 2008 as a production and logistics coordinator by Sterling's general manager and head of production, Janet Huynh ("Ms. Huynh"). (Nancy Dep. 28:4-6; 33:2-8.) Prior to working at Sterling, and then Ng Branding, Ms. Ng worked for four years in the customs and importation field with two prior companies, performing entries on behalf of customers. (Id at 20:2 – 21:19; 22:25 -23:9; 24:2-17; 25:13-22.) Ms. Ng testified that she was interviewed solely by, and hired by, Ms. Huynh to work in the production department of Sterling, and later Ng Branding. (Id at 29:6-22.) Ms. Ng testified that the production department was a headed by Ms. Huynh and created to work with customs brokers for entry of the merchandise, including HTS classifications. (Id at 45:5 – 47:3.)

Ms. Ng testified that she personally communicated directly with customs brokers regarding the entries and sometimes provided HTS numbers to the customs brokers. (Nancy Dep. 47:15-22; 57:20 – 60:4; 61:12 – 62:17.) Further, Ms. Ng testified that she sometimes communicated with an international branch of Sterling regarding quality control of the entries, but never with Mr. Ng personally. (Id at 34:14-22; 35:2-5.) Ms. Ng did not testify that she ever spoke to Mr. Ng about Sterling and Ng Branding's HTS classification determinations, that Mr. Ng ever instructed her to use any HTS classification, that Mr. Ng ever instructed her to provide any documentation to customs brokers or Customs, that Mr. Ng ever reviewed the documentation she provided to the customs brokers or that Mr. Ng ever was a part of the production department. (<u>See</u> <u>generally</u> Nancy Dep.)

---

[1] Although Nancy Ng shares the same last name as Defendant Alex Ryan Ng, she is in no way related to Mr. Ng. (Nancy Dep. 52:20-22.)

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

<u>Janet Huynh</u>

On November 20, 2014, the government deposed Ms. Huynh. (A true and correct copy of the Deposition Transcript of Janet Huynh is attached as Exhibit 'B' to the Index to Appendix (hereafter "Huynh Dep.").) Ms. Huynh testified that she worked for Sterling, and later Ng Branding, as a production manager and general manager. (Huynh Dep. 7:8-14; 24:9 – 25:8; 51:15-17.) Ms. Huynh testified that in addition to being the general manager of Sterling and Ng Branding, she was the head of the production department, charged with communicating with the customs brokers and Customs regarding the entries. (Id at 41:1-4.) Ms. Huynh further testified that she often instructed Ms. Ng on how to prepare paperwork to be submitted to the customs brokers, including the HTS classification numbers. (Id at 41:5-11.) Ms. Huynh also testified that Ms. Ng was often solely responsible for communicating with the customs brokers. (Id 41:1-4.) Ms. Huynh did not testify that she ever spoke to Mr. Ng about Sterling and Ng Branding's HTS classification determinations, that Mr. Ng ever instructed her to use any HTS classification, that Mr. Ng ever instructed her to provide any documentation to customs brokers or Customs, that Mr. Ng ever reviewed the documentation she provided to the customs brokers or that Mr. Ng ever was a part of the production department. (<u>See</u> <u>generally</u> Huynh Dep.)

<u>Fernanda Calvo</u>

On November 19, 2014, the government deposed Fernanda Calvo ("Ms. Calvo"). (A true and correct copy of the Deposition Transcript of Fernanda Calvo is attached as Exhibit 'C' to the Index to Appendix (hereafter "Calvo Dep.").) Ms. Calvo testified that she did not work for the production department, never worked with the customs brokers or Customs; but instead, worked in the design department, focusing on marketing, branding and sales. (Calvo Dep. 24:11-23.) Ms. Calvo provided no relevant testimony relating to the question of whether Mr. Ng

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

"personally" committed any act "introducing" any merchandise into the United States. (See generally Calvo Dep.)

Ty Ngo

On November 18, 2014, the government deposed Ty Ngo ("Mr. Ngo"). (A true and correct copy of the Deposition Transcript of Ty Ngo is attached as Exhibit 'D' to the Index to Appendix (hereafter "Ngo Dep.").) Mr. Ngo testified that he was a minority owner/employee of Sterling. (Ngo Dep. 38:22 – 39:14.) Mr. Ngo further testified that he did not work for the production department and never worked with the customs brokers or Customs. (See generally Ngo Dep.) Mr. Ngo's testimony also confirmed that Mr. Ngo had no knowledge that Mr. Ng ever made any HTS classification decisions or communicated with the customs brokers. (Id.)

Alex Ng (individually)

On January 15, 2015, the government deposed Defendant Alex Ng in his individual capacity. (A true and correct copy of the Deposition Transcript of Alex Ng is attached as Exhibit 'E' to the Index to Appendix (hereafter "Ng Dep.").) Mr. Ng testified that he has never been a customs broker, never worked in the customs broker business, never held a customs broker license, never had any experience making HTS classification determinations, never filed entries for import, never reviewed any literature on how to classify goods, never received any training on how to classify goods, never attended any conferences on how to classify goods and never sat for the customs broker examination. (Ng Dep. 14:25 – 15:12; 15:6-9; 16:3-5; 16:6 – 17:7.) Mr. Ng testified that he has been primarily living in Vietnam since 2005 and during the period in which the government claims the alleged misclassifications occurred. (Id at 6:20 – 10:25.) Mr. Ng testified that because he resided abroad and was not present for day-to-day operations, including working with customs brokers and Customs, he established a production department

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

dedicated to such work and hired Ms. Huynh to manage the department. (Id at 52:1-16; 61:14 – 62:2; 75:20 – 76:2; 110:14-20.) Mr. Ng also testified that as part of Ms. Huynh's duties, she was charged with hiring employees to assist her in the production department, including Ms. Ng. (Id at 61:14 – 62:2; 77:3 – 78:5.) Mr. Ng testified that he did not supervise the production department, Ms. Huynh or Ms. Ng or their employment of customs brokers. (Id at 113:5 – 114:2.)

Mr. Ng testified that he never communicated with the customs brokers and does not even know the brokers that were used by Sterling and Ng Branding. (Ng Dep. 115:4-6.) Mr. Ng testified that Ms. Huynh was solely charged with hiring and communicating with the customs brokers and he provided no instruction otherwise. (Id at 114:7-6; 115:14-20; 120:3-8.) Mr. Ng testified that he hired employees to work in the production department with the customs brokers to determine the correct HTS classifications for the merchandise, that he did not provide Ms. Huynh, Ms. Ng or the production department with any instruction as to how to prepare or complete any paperwork to be provided to customs brokers for entry and that he had no involvement at Sterling or Ng Branding in matching the merchandise to a particular HTS classification. (Id at 117:1-11; 118:19 – 119:7; 14723 – 148:2; 205:24 – 206:19.) Lastly, Mr. Ng testified that after Sterling met with Customs, he relied on his former counsel's advice that Sterling had been properly classifying its entries. (Id at 143:3-12; 203:15-16.)

Sterling Footwear, Inc.

On January 16, 2015, the government deposed Defendant Alex Ng as a 30(b)(6) witness for Sterling Footwear, Inc. (A true and correct copy of the Deposition Transcript of Alex Ng testifying on behalf of Sterling Footwear, Inc. is attached as Exhibit 'F' to the Index to Appendix (hereafter "Sterling Dep.").) Mr. Ng testified that Ms. Huynh was hired by Sterling to run the

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

production department and that she had experience in clearing entries with customs. (Sterling Dep. 15:5-25; 16:19 – 17:11.) Further, Mr. Ng testified that Ms. Huynh was instructed to work with the customs brokers to determine the correct HTS classification and that he never provided Ms. Huynh with any HTS classification to use for the merchandise. (Id at 18:12-24; 45:1-13; 19:25 – 20:10; 85:8-22.) Mr. Ng testified that he was not aware if Sterling provided classification numbers to the customs brokers; or, if the classifications were determined by the brokers. (Id at 34:19 – 35:15.) Mr. Ng testified that he never provided any employee any instruction on how to prepare and submit any documentation to the customs brokers. (Id at 102:18-20.) Lastly, Mr. Ng testified that after Sterling met with Customs, he relied on his former counsel's advice that Sterling had been properly classifying its entries. (Id at 77:2-5.)

Ng Branding LLC

On January 16, 2015, the government deposed Defendant Alex Ng as a 30(b)(6) witness for Ng Branding, LLC (A true and correct copy of the Deposition Transcript of Alex Ng testifying on behalf of Ng Branding, LLC is attached as Exhibit 'G' to the Index to Appendix (hereafter "Ng Branding Dep.").) Mr. Ng testified that Ms. Huynh and Ms. Ng worked in the production department of Ng Branding and were exclusively responsible for communicating and with and providing documentation to the customs brokers in entering Ng Branding's merchandise and making HTS classification determinations. (Ng Branding Dep. 10:12-22.)

Mr. Ng's three depositions confirm that his role at Sterling and Ng Branding was limited to the designing and procurement of the merchandise in Asia, that he had no involvement in the import process, including entries and HTS classification, and he did not "personally" commit any "threshold" act that "introduced" any merchandise into the United States. (See generally Ng Dep., Sterling Dep., and Ng Branding Dep.)

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

b. *The Written Discovery Responses and Documents Produced*

Mr. Ng, Sterling and Ng Branding each served a set of discovery on the government, which included interrogatories, requests for production and requests for admission, respectively. All of the government's responses confirm that the government is not in possession of a single piece of evidence establishing Mr. Ng "personally" committed any "threshold" act that "introduced" any merchandise into the United States.[2]

Mr. Ng's Discovery

Mr. Ng personally served the government with a set of interrogatories, requests for admission and requests for production. (A true and correct copy of Mr. Ng's discovery to the government is attached as Exhibit 'H' to the Appendix (hereafter "Exhibit H"); a true and correct copy of the government's responses to Mr. Ng's discovery is attached as Exhibit 'I' to the Appendix (hereafter "Exhibit I").) Mr. Ng's Interrogatory No. 7(a) asks the government to state all facts that support its contention that Mr. Ng entered Sterling Footwear's merchandise. The government provides no facts that support its contention whatsoever; and, instead replies with a meritless objection, attempting to improperly avoid responding to the interrogatory. (Exhibit I, p. 11.)

Mr. Ng's Interrogatory No. 10, Mr. Ng asks the government whether it contends Mr. Ng made classification determinations pursuant to the HTS on behalf of Sterling or Ng Branding. (Exhibit I, p. 15.) The government responds "yes"; however, instead of providing a shred of

---

[2] This Motion for Summary Judgment will highlight some of the most egregious attempts by the government to avoid responding to Defendants' discovery as it relates to Mr. Ng's alleged "personal" acts in "introducing" merchandise. Due to length restrictions of this motion and brevity, Mr. Ng is unable to highlight each and every response in which the government improperly relies on unsupportable and unjustified objections to avoid having to provide any facts, documents or admissions relating to Mr. Ng alleged involvement in the introduction of merchandise. Mr. Ng however asks the court to review all the governments' responses, inappropriate objections and lack of evidentiary support for its allegations that firmly establishes the government is in possession of no evidence justifying Mr. Ng's inclusion as a defendant.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

evidence in the form of alleged facts, witnesses or reference to any document, it merely provides another duplicitous objection attempting to avoid stating, "we have no evidence". (Id at 15-16.) Mr. Ng's Interrogatory 11, Mr. Ng asks the government whether it contends Mr. Ng directed any person to misclassify any merchandise pursuant to HTS. (Id at 16-17.) The government responds to Interrogatory No. 11 by simply providing another meritless objection, failing to state any evidence establishing Mr. Ng directed any person to misclassify goods. (Id at 17.) The government responds similarly inappropriately to Interrogatory Nos. 12, 13, 15, 17 and 18. (Id at 17-18; 21-24.) Many other of the government's responses to the Interrogatories attempts to instead reference the documents produced by the government and/or the Complaint. However, as will be discussed further below, not a single document produced by the government contains any evidence whatsoever that Mr. Ng "personally" committed any "threshold" act "introducing" merchandise into the United States. Similarly, the Complaint does not allege a single fact that Mr. Ng "personally" committed any "threshold" act "introducing" merchandise into the United States and is insufficient nevertheless to provide evidentiary support in opposing a Motion for Summary Judgment. USCIT R. 56(e)(2).

Mr. Ng's Request for Admission No. 9 asks the government to admit that there are no facts that support the government's contention that Mr. Ng personally directed the customs brokers to enter merchandise under specific HTS classifications. (Exhibit I, p. 30-31.) In response, the government merely provides another meritless objection, neither admitting or denying the request, and thus admitting its truth.[3] (Id.)

---

[3] USCIT Rule 36(a)(4) governs a party's responses to Request for Admission. Rule 36(a)(4) requires that a party admit or deny the request; or where appropriate and in good faith, qualify an answer or only admit or deny a part of the request. Here, the government has not provided any response to an unobjectionable request; not even a partial or qualified response. Thus, the Court should consider this and all similar non-responses to the requests as admissions.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

Mr. Ng's Request for Admission No. 14 asks the government to admit Mr. Ng never personally made any classification determinations pursuant to the HTS on behalf of Sterling or Ng Branding. (Id at 32.) In response, the government fails to admit or deny the request and merely objects on the ground that the admission is not relevant.[4] This shockingly meritless objection actually states, in the face of Trek II, that Mr. Ng's involvement in making classification determinations is irrelevant and/or of no substantial importance. In reality, nothing in this lawsuit could be more important, more relevant or more determinative than the determination of this single fact. Obviously, the government's objection is without merit and in bad faith, and the Court should treat such non-response as an admission. The government makes a similar bad-faith and meritless objection to Requests for Admission Nos. 15, 22, 23 and 31, failing to admit or deny that no facts exist establishing that Mr. Ng made HTS classification determinations, never communicated with the customs brokers and never personally made any misrepresentations; and thus, admitting the requests. (Exhibit I, p. 33.) The government makes several more meritless objections to Mr. Ng's Requests for Admissions Nos. 16-20, failing to admit or deny Mr. Ng never directed, assisted or authorized any person to misclassify any merchandise; and thus, admitting the requests. (Id at 33-35.)

Sterling and Ng Branding's Discovery

Sterling and Ng Branding also served interrogatories, requests for production and requests for admission on the government, respectively. (A true and correct copy of Sterling's discovery to the government is attached as Exhibit 'J' to the Appendix (hereafter "Exhibit J"); a

---

[4] On or about September 26, 2014, three letters were sent to the government pursuant to USCIT Rules 7, 36 & 37, on behalf of each Defendant respectively, as it relates to each of their Requests for Admission and the government's failure to provide proper responses. (A true and correct copy of the letters are attached hereto as Exhibit O.) The government ignored the Defendants' letters and never amended its responses to comply with Rules 36 & 37. Unfortunately, due to Mr. Ng's severely impoverished economic position, he was unable to afford to bring a Motion to Compel further responses pursuant to Rule 36(a)(6).

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

true and correct copy of the government's responses to Sterling's discovery is attached as Exhibit 'K' to the Appendix (hereafter "Exhibit K"); a true and correct copy of Ng Branding's discovery to the government is attached as Exhibit 'L' (hereafter "Exhibit L"); a true and correct copy of the government's responses to Ng Branding's discovery is attached as Exhibit 'M' (hereafter "Exhibit M").)  Like its responses to Mr. Ng's discovery, many of the government's responses to Sterling and Ng Branding's discovery also present meritless objections and/or reference documents and/or the Complaint which are totally devoid of evidentiary support against Mr. Ng personally.  (Please see the government's responses to Sterling's Interrogatories Nos. 15, 19, 20 and 21  (Exhibit K, p. 17-19; 25-29), responses to Sterling's Requests for Admission Nos. 3, 5 (Exhibit K, p. 31-32), responses to Ng Branding's Interrogatories Nos. 8 and 9 (Exhibit M, p. 8-9) and responses to Ng Branding's Requests for Admission Nos. 2, 3, 4, 5, 9 and 10 (Exhibit M, p. 11-12, 14).)

Despite the overwhelming amount of bad faith objections and attempts to avoid responding to Defendants' discovery, the government, to its credit, actually properly responds to one of Ng Branding's Interrogatories.  Ng Branding's Interrogatory No. 7 asks the government to "[i]dentify the acts you contend Mr. Ng personally performed at Ng Branding as it related to the classification of entries identified in the complaint."  (Exhibit M, p. 8.)  In response, the government provides "[t]here are no acts to be identified at this time".  (Id.)  Such admission that the government is not in possession of a single fact that Mr. Ng personally performed any act while at Ng Branding relating to classification of entries, firmly establishes this action cannot continue against him personally.  Trek II, 767 F.3d at 1297-1300.  While the government rightfully should have provided similar responses to all of the Defendants' written discovery; this

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

admission mandates, pursuant to <u>Trek II</u>, the granting of this Motion as it relates to Mr. Ng being personally liable for Ng Branding's alleged misclassifications.  <u>Id</u>.

<u>The Government's Document Production</u>

In response to the Defendants' requests for production, the government produced 6,140 pages of electronically unsearchable documents, most of which are in duplicate, triplicate or more, and mostly non-responsive to the requests.  None of the produced documents provide any specific, relevant and/or admissible evidentiary support that Mr. Ng personally participated whatsoever in the importation process (introduction); including, making classification determinations, instructing others to make classification decisions, communicating with customs brokers, preparing documents relating to entries or importation, overseeing or approving the production department and/or the classification determinations and/or hiring customs brokers.  However, buried in the voluminous production were a few documents that are only relevant to (1) confirm and substantiate the deposition witnesses' testimony; (2) confirm Mr. Ng never "personally" committed any "threshold" act "introducing" any merchandise into the United States; (3) confirm the government knew, prior to filing this lawsuit, the standard in <u>Trek II</u> required to name a person as a defendant that was not the importer of record or customs broker; and (4) establish the government included Mr. Ng as a defendant despite lacking any probable cause to do so because it believed Mr. Ng to be the only source of assets from it could collect.

Attached as Exhibit 'N' is a July 27, 2009 email from Ms. Ng (Sterling & Ng Branding Logistics and Production Coordinator) to Scott Kauffman of Seattle Logistics (Sterling & Ng Branding's customs broker) wherein Ms. Ng is asking for assistance from Mr. Kauffman in

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

classifying one of Sterling's products.[5]  (Exhibit N, GOV0003939 – "I need classification help on this one.  I don't have the shoe with me, so I can't provide a picture.. [sic] Upper: *Printed Metallic Gradient Leather,* Lining: *Canvas,* Outsole: *Rubber*".)  This email confirms Ms. Ng, Ms. Huynh and Mr. Ng's testimony that the production department employees of Sterling and Ng Branding worked with and relied upon their customs brokers to accurately classify the merchandise.  Sterling and Ng Branding only provided HTS classification numbers to customs brokers for entry after it had been prior determined correct by a licensed customs broker. (Exhibit N.)  The remainder of the documents produced by the government that are relevant to Mr. Ng's personal acts and his defendant status are related to (1) the government's knowledge of the standard required, per Trek II, for an individual working for and protected by a limited liability entity to be found liable under section 1592(a)(1)(A) (Introduction); (2) the government's discussion as to the entities lack of assets; and (3) the government's discussion as to how to justify including Mr. Ng as a defendant despite the total lack of admissible evidence of his liability under 1592(a)(1)(A).  This Motion will discuss these documents in a separate section below.

The Government did not Supplement its Disclosures and Responses

USCIT Rule 26(e)(1) requires that a party:

> . . . who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

---

[5] Exhibit N was produced by the government in response to the Defendants' requests for production and used as Exhibit 5 in the government's deposition of Mr. Ng individually.  (Ng Dep. 3:17-18; 49:11-13; 86:8-11; 102:2-5.)

23
FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

Here, all of the government's responses and disclosures to the Defendants' written discovery failed to put forth a single alleged fact, document, witness or admission that Mr. Ng "personally" committed any "threshold" act "introducing" any merchandise into the Untied States. The government's responses were served on Defendants on July 7, 2014. Despite the Defendants' meet and confer letters, the government failed to properly amend its responses. (Exhibit O.) Even after the government's depositions of the Sterling and Ng Branding employees and Mr. Ng in November 2014 and January 2015, the government still did not amend or supplement any of its responses or disclosures with facts, documents and/or witnesses that would provide admissible evidentiary support to the contention that Mr. Ng personally introduced merchandise. The government's failure to amend or supplement such responses and disclosures is a tacit admission of its total lack evidentiary support to maintain this action against Mr. Ng individually.

ii. The Evidence establishes Mr. Ng's acts are not within the Scope of Liability as set out by Trek II and are clearly distinguishable from that of Mr. Shadadpuri

In Trek II, the individual defendant, Shadadpuri, was found by the court to have "introduced" merchandise into the United States and liable for violation of section 1592(a)(1)(A) because Shadadpuri admitted in the proceedings that he (1) personally communicated directly with the customs brokers; (2) personally instructed his "aids" to communicate with the customs brokers; (3) prepared the false invoices (critical documents) himself; (4) personally instructed his "aids" on how to create false invoices; (5) personally faxed/sent critical documents to the customs brokers for entry; (6) personally instructed his "aids" to fax/send critical documents to the customs brokers for entry; (7) personally hired the customs brokers; (8) was personally involved and oversaw

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

the importation and entry of the merchandise; (9) admitted that he personally committed all the aforementioned acts; and (10) admitted that the merchandise was undervalued and in violation of section 1592(a)(1)(A).  767 F.3d at 1299.  In contrast, Mr. Ng did none of these things.

Instead, the evidence only supports the fact that Mr. Ng established a dedicated production department to work with the customs brokers to determine the proper classification, hired qualified and experienced employees to run and oversee the production department, instructed the production department to rely on the opinions of customs brokers and relied on his former counsel's opinion that the HTS classifications used were correct.   (Exhibit W, GOV0005927 – "When asked who determined the classifications for the footwear, Janet Huynh and Nancy Ng stated that they rely on their brokers to classify footwear".)

Pursuant to Trek II, all the acts that could be considered an "introduction" under section 1592(a)(1)(A) were performed solely by Ms. Ng and Ms. Huynh.[6]  (See generally Nancy Dep. and Huynh Dep.)  Additionally, Import Specialist Ben Whitney confirms in his internal CBP memorandum that Ms. Huynh explained in great detail the basis by which she made classification decisions, clearly showing her personal involvement in the classification process, that she was not being directed; and instead, making her own independent informed decisions.  (Exhibit W, GOV0005925.)  Despite having a plethora of evidence that could be used to include Ms. Ng and Ms. Huynh as defendants in this action as section 1592(a)(1)(A) introducers, the government chose to ignore such

---

[6] The government also had a great deal of evidence that Sterling and Ng Branding's Customs Broker, Scott Kauffman, performed acts that would be considered an introduction or entry under section 1592(a)(1)(A), but similarly chose to ignore such evidence.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

evidence and strangely only pursue Mr. Ng.  Additionally, here, unlike <u>Trek II</u>,

Defendants do not admit or concede that there even were misclassifications and maintain

that the classifications were correct.

a.      *Personal Acts also must "bring Goods to the Threshold of the Process of Entry" pursuant to <u>Trek II</u>*

In addition to the requirements stated above, <u>Trek II</u> also provides a requirement

that such personally performed acts must be done at the threshold of entry.  Relying on

<u>Panama Hats</u>, the court in <u>Trek II</u> restricted its holding, that persons performing personal

acts may be held liable for introducing or attempting to introduce merchandise into the

United States in violation section 1592(a)(1)(A), to instances where the personal acts

"bring goods to the threshold of the process of entry by moving goods into CBP custody

in the United States and providing critical documents . . . for use in the filing of

contemplated release into the United States commence even if no release ever occurs."

<u>Trek II</u>, 767 F.3d at 1299.  Section 1592(a)(1)(A)(i)-(ii) mirrors this holding as the

language only allows for liability where the person introduces the merchandise by

providing a materially false or materially omitted (1) document, (2) electronic

transmission, (3) written or oral statement, or (4) act.  Here, the evidence unquestionably

establishes that Mr. Ng never personally provided, or instructed anyone else to provide,

any customs broker or Customs with any document, electronic transmission, written or

oral statement, act or omission whatsoever, regardless of whether it was true, false,

material or immaterial.  The wrongful act must be one intended to immediately enter

goods.  The <u>Trek II</u> court emphasized Shadadpuri "did everything short of the final step."

Anything less than that does not fall within the ambit of the introducing language of

section 15929(a)(10(A).  Mr. Ng performed no act to introduce any merchandise into the United States, let alone a "threshold" act of moving goods into CBP custody or providing critical documents for entry.

The ordinary and customary definition of the word "threshold" in Trek II is "the place or point of entering or beginning" as defined online by the Mariam-Webster dictionary.  Merriam-Webster, *Definition of Threshold* (2015), *available at http://www.merriam-webster.com/dictionary/threshold*.  Thus, the Trek II court put an important limitation on the scope that liability will attach to individuals, limiting it to personal acts that have a very close and present nexus to the entry of the goods (sending critical documents to customs broker or moving goods to CBP custody).  The Trek II court obviously wanted to limit the governments reach under section 1592(a)(1)(A) to exclude outlying, non-critical acts by persons.  If such important limitation were not present, it is certainly conceivable, if not inevitable, that the government would soon be attempting, like here, to sue owners for their prominent status in the company, because without their capital there would be no company and without the company, the alleged introduction or entry could not have taken place.  Seeing this frightening scenario of a runaway application of a statute by the government, the Trek II Court added "[w]e do not hold Mr. Shadadpuri liable because of his prominent officer or owner status in a corporation that committed a subparagraph (A) violation."   767 F.3d at 1299.

      b.     *The only alleged Facts provided by the Government are all totally irrelevant to the proper Analysis, unsubstantiated and mostly false*

Here, the only alleged facts the government attempts to use to draw Mr. Ng into liability are totally irrelevant to the liability analysis, mostly false and not to be

considered as instructed by Trek II.  The government has relied only on the following

alleged facts to include Mr. Ng as a defendant in this action:

(1)     The government relies on the contention that Mr. Ng was the sole corporate

officer Sterling, which of course is not true.[7]  (Complaint ¶ 9.)  However, even if

even if he were, Trek II dictates that prominent owner or sole officer status is

irrelevant to the test.  767 F.3d at 1299.

(2)     The government relies on the contention that "Mr. Ng engaged in a pattern of

illegal conduct where he knowingly participated in a scheme to avoid millions of

dollars in duties by entering Sterling Footwear's merchandise under incorrect

classifications" by using 8 different brokers over the course of Sterling and Ng

Brandings operations.  (Complaint ¶ 42.)  First, the standard of liability the

government uses here is incorrect.  "Knowingly participating in a scheme" is

language to be used when establishing criminal liability.[8]  Here, the test is only

personal acts performed at the threshold of entry.  Second, the use of multiple

customs brokers is in no way relevant to the test in Trek II, not to mention

customary and legal.  Third, although irrelevant to the analysis, the evidence

establishes that Mr. Ng never hired the customs brokers himself, or directed

anyone else to hire specific brokers, and such decision was the responsibility of

the production department alone.  (Nancy Dep. 47:15-22; Huynh Dep. 35:5-12;

Ng Dep. 112:8-19; 113:5 – 114:16.)  The pleading confirms this as it states all the

---

[7] Attached, as Exhibit 'Q' is a true and correct copy of the Statement of Information filed with California Secretary of State for Sterling Footwear, Inc.  (DEF00094.)  The Statement clearly states that in additional officer of the company is Ty V. Ngo.  (Id.)
[8] It is clear the government intentionally also used a criminal liability standard in order to scare Mr. Ng into settlement, knowing it did not have sufficient evidence to establish the true standard set out in Trek II.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

acts were actually performed by the companies (Sterling or Ng Branding) and not Mr. Ng personally. (Complaint ¶ 42.)

(3) The government relies on the contention that "Mr. Ng engaged in a pattern of illegal conduct where he knowingly participated in a scheme to avoid millions of dollars in duties by entering the same merchandise under incorrect classifications through the use of multiple companies". (Complaint ¶ 43.) Again, the standard of liability the government uses here is incorrect. "Knowingly participating in a scheme" is language to be used when establishing criminal liability. Here, the test is only personal acts performed at the threshold of entry. Similarly, the ownership of multiple companies for entry is in no way relevant to the test in Trek II. Third, even if this were relevant, the evidence establishes that Mr. Ng established Ng Branding and was operating Ng Branding prior to the government's investigation and contact of the Defendants regarding their entries.[9] In reality, Mr. Ng formed Ng Branding to take the license for Robin's Jeans, in which a separate entity was necessary to hold the license. (Exhibit S, DEF01101; Ng Dep. 179:15 – 181:13; 186:2-23.) Even if such contention were accepted as true, it in no way establishes any liability under section 1592(a)(1)(A) pursuant to Trek II.

These unsubstantiated, irrelevant and mostly false contentions in the Complaint are the only resemblance of evidence the government has provided to justify Mr. Ng's personal liability in the matter. (The contentions contained in a complaint are not

---

[9] Attached, as Exhibit 'R' is a true and correct copy of the Limited Liability Company Articles of Organization for Ng Branding, LLC filed with the California Secretary of State on February 13, 2009, forming the LLC. The company was formed to take on the Robin's Jean license and began operating immediately. (Ng Dep. 179:15 – 181:13; 186:2-23.) This was 3 months prior to the initiation of CBP's investigation of the Defendants. Paragraph 11 of the Complaint admits that Customs began its investigation on May 19, 2009.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

sufficient to defeat a Motion for Summary Judgment. USCIT R. 56(e)(2).)  In order for this court to deny this Motion for Summary Judgment, this Court would have to ignore the holdings in Trek II by pushing the parameters of liability beyond the express limitations set forth therein, and allow prominent owner status and other unsupported contentions, like the use of multiple brokers or ownership of two companies, as a basis for potential liability.

###### C.     Why was Mr. Ng sued in his Individual Capacity?

Given the total lack of evidentiary support to justify suing Mr. Ng in his individual capacity, the question begs, why would the government include Mr. Ng as a Defendant? Unfortunately, the answer to this question is revealed in the government's document production and is quite chilling.

In a December 28, 2009 CBP internal memorandum to Supervisory Import Specialist, Jonathan Erece, Import Specialist Ben Whitney describes a meeting with Sterling on July 29, 2009, wherein Janet Huynh detailed the basis upon which she made the HTS classification determinations.  (Attached to the Appendix as Exhibit 'W', is a true and correct copy of the memorandum; at GOV0005924.)  The description provided by IS Whitney clearly shows Ms. Huynh uses her independent knowledge to make informed decisions as to what the correct classification should be.  (Id.)  Later in the memorandum, IS Whitney describes an October 30, 2009 meeting wherein Ms. Ng, Ms. Huynh and Mr. Ng are present.  (Id at GOV0005927.) Throughout the October 30 meeting, Mr. Ng answered no classification or classification related questions, as he has no knowledge of the classification process.  Ms. Ng and Ms. Huynh responded to all the classification questions instead.  Ms. Ng and Ms. Huynh were described as explaining to IS Whitney that they rely on their customs brokers to make proper classification

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

determinations. (Id.) To conclude the memorandum, IS Whitney recommends that Sterling, Mr. Ng, Ms. Ng and Ms. Huynh have been grossly negligent. (Id at GOV0005928.) Mr. Whitney justifies Mr. Ng's involvement by stating the evidence supports the fact that Mr. Ng is the (1) agent for service of process for the corporation and that (2) he owns multiple companies. (Id.) Although both these facts are totally irrelevant to the inquiry for personal liability for introduction under Trek II, this is the sole basis upon which IS Whitney relies in implicating Mr. Ng. This rationale is then replicated in the Complaint as the only evidentiary support to justify Mr. Ng's inclusion as a Defendant, and later debunked in an internal email by CBP's Chief Counsel, Alan Cohen, as an insufficient basis to justify including Mr. Ng as a defendant. (Complaint ¶¶ 9, 42, 43.)

In a March 24, 2011 CBP internal memorandum to CBP Chief Counsel, Senior Import Specialist Ben Whitney recommends that the penalty be levied against Sterling Footwear, Alex Ng, Nancy Ng and Janet Huynh. (Attached to the Appendix as Exhibit 'V', is a true and correct copy of the memorandum; at GOV0005756.)

In a May 20, 2011 internal email communication between various government employees at the CBP, attorney Alan Cohen writes to various other CBP employees that he has a potential "$22 million" lawsuit against the Defendants. (Attached to the Appendix as Exhibit 'U', is the email communication between CBP employees regarding how/whether to include Mr. Ng as a Defendant, at GOV00057862.) In a May 23, 2011 email to various CBP employees, Mr. Cohen asks what evidence CBP has against Mr. Ng as it relates to his personal participation and notes that IS Whitney's December 28, 2009 memorandum relying on Mr. Ng's officer or agent status is totally insufficient. (Id at GOV0005861-62.) Mr. Cohen goes on to state that if there is no

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

evidence against Mr. Ng, then the government would not be justified in bringing suit against him. (Id.) Large parts of the email correspondence are improperly redacted. (Id.)

In a May 24, 2011 email correspondence from Mr. Cohen to other CBP employees, Mr. Cohen inquires as to whether Sterling employees Janet Huynh and Nancy Ng are gong to be named as defendants, recognizing they are the only individuals at Sterling and Ng Branding that personally participated in the all the alleged wrongs (introductions). (Id at GOV0005858.) Mr. Cohen goes on to ask if they are the "human beings responsible for the falsities". (Id.)

There were several responses by CBP employees to Mr. Cohen's questions as to what evidence CBP has against Mr. Ng and whether Ms. Ng and Ms. Huynh would be named as defendants. The government conveniently and improperly redacted all such responses.[10] However, we can reasonably deduce the response was: (1) we have no evidence against Mr. Ng personally and (2) Ms. Ng and Ms. Huynh don't have enough money to spark our interest. (GOV0005820-24; GOV0005829-33; GOV0005835-37; GOV0005842-47.) This is the logical conclusion given that the Complaint only states the totally irrelevant evidentiary justification for Mr. Ng's inclusion as that exactly stated in IS Whitney's 12/28/2009 internal memorandum, later debunked by Mr. Cohen as insufficient. As no new evidentiary support was added to the Complaint, the only conclusion was the improperly redacted email responses did not contain any additional evidentiary support. (Complaint ¶¶ 9, 42, 43.)

---

[10] A true and correct copy of the government's privilege log is attached hereto as Exhibit 'X'. All the sections identified above, that were redacted in response to CBP Chief Counsel Alan Cohen's question regarding what evidence CBP had against Mr. Ng personally, are identified in the government privilege log as being redacted because of "AC – Attorney Client Privilege (reflecting legal advice)". (Exhibit X.) However, the very same email chains identified above contain a great deal more legal advice that is not redacted and relate to the exact same subject matter. (Exhibit U, GOV0005817-62 - See all the legal analysis and advice in the emails from Chief Counsel Cohen to the employees regarding personal liability and Mr. Ng's actions that is not redacted.) The government waived such privilege by disclosing the other legal advice it did not find damaging. A voluntary, intentional waiver of the attorney client privilege applies to all other communications relating to the same subject matter. *Blue Lake Forest Products, Inc. v. United States* (2007) 75 Fed. Cl. 779, 793.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

In an internal email communication between various government employees at the CBP, CBP employee Marcia Kass begins an email communication to other CBP employees, including Mr. Robert Thierry, stating that she has "huge concerns" about pursuing this penalty because, among other concerns, there was an asset search for Sterling that determined "there are none". (Attached to the Appendix as Exhibit 'T' is the email communication between CBP employees regarding how/whether to include Mr. Ng as a Defendant, at GOV0005784-85.) Additionally, Ms. Kass was concerned that the government would not be able to "collect" against Mr. Ng's limited liability entities even if the government received "a favorable judgment from the AUSA". Ms. Kass also expressed her concern that "[t]he resources expended by the CBP to get this penalty to this stage have been substantial and we will be expending additional sparse resources without any recoveries." (Id.) In a February 27, 2012 email from CBP attorney Alan Cohen to Ieva K. O'Rourke, Mr. Cohen states, "the odds are overwhelming they [Defendants] will not defend this civil penalty". (Id at GOV0005783.) Mr. Cohen believes that the Defendants would likely submit to the power of the government.

On February 24, 2012, about an hour after receiving Ms. Kass' email regarding an inability to "collect" on a judgment from the entity Defendants, CBP Operations Specialist John Erece wrote an email correspondence to other CBP employees asking for an asset check on Mr. Ng individually. (Id at GOV0005761.) In a March 20, 2012 email from Mr. Erece to other CBP employees, Mr. Erece writes, "[p]er FAS Pennington, research indicates that subject Alex Ng does have assets (3 Million) from the sale of several homes within 2010-2011". (Id at GOV0005760.) On that same day CBP attorney Alan Cohen then responds to the email chain stating "**If we have evidence that Mr. Ng participated in the violation**, then he should be names [sic] as a co-violator. Otherwise he will take Sterling Footwear to corporate heaven." (Id

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

at GOV0005759 (emphasis added).)  Mr. Cohen then states that the only way to justify including Mr. Ng as a Defendant is to allege alter-ego/pierce the corporate veil or the test set forth in Trek. (Id.)  As we know, the government was not then, or ever, in possession of, as Mr. Cohen put it, "evidence that Mr. Ng participated in the violation".

CBP never had sufficient evidence to justify applying the penalty to Mr. Ng or including him as a defendant in this lawsuit.  The CBP Chief Counsel knew this from the beginning and there are internal emails between CBP that were improperly redacted by the government, which confirm this.   CBP did have sufficient evidence to include Nancy Ng and Janet Huynh as defendants in the lawsuit as all the evidence establishes their personal involvement in the entry process, without instruction from Mr. Ng.  After it is determined that Ng Branding and Sterling are insolvent, there is renewed interest Mr. Ng and his assets.  An asset search of Mr. Ng appears to reveal Mr. Ng has $3 million dollars in assets.  The Chief Counsel opines that it is unlikely the Defendants will fight the lawsuit and decides to proceed against Mr. Ng personally since he appears to be the party with deep pockets.[11]  Despite having clear evidence, as acknowledged by the internal memorandum, that Ms. Ng and Ms. Huynh personally performed acts that would render them liable under section 1592(a)(1)(A) if there was a negligent misclassification, CBP does not name Ms. Ng or Ms. Huynh as defendants.  CBP ignores Ms. Ng and Ms. Huynh because their pockets do not appear to be deep like Mr. Ng's.  When CBP causes the Complaint to be filed, the only facts or evidence contained therein alleged to support Mr. Ng's personal liability is the exact same as what CBP's Chief Counsel had previously stated was insufficient.

---

[11] CBP's further attempt to inappropriately force Mr. Ng into settlement despite total lack of evidence is supported by its weird inclusion of clearly inapplicable criminal liability language ("pattern of illegal conduct . . knowingly participated in a scheme") in sections 42 and 43 of the Complaint attempting to scare Mr. Ng into believing he is or may be facing criminal action.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

After extensive discovery, no other relevant, specific and admissible evidence has emerged supporting Mr. Ng's personal liability.

### III. As a Matter of Law, Mr. Ng Cannot be Liable for the Acts of the Entities under the Theories of Aiding and Abetting, Piercing the Corporate Veil and Alter Ego

The Government did not allege in the Complaint that Mr. Ng is liable under section 1592(a)(1)(B), aiding and abetting a person to violate subparagraph (A). (See generally Complaint.) The Government only alleged in the counts I-III that Mr. Ng is personally liable because he himself violated section 1592(a)(1)(A), not because he aided and abetted the violation. The government's failure to plead a claim for relief under section 1592(a)(1)(B) prevents it from any relief under such claim. Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) – (A complaint "must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that my be interposed"). USCIT Rule 8(a)(2)-(3) requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought". Here neither statements are present to support a claim for relief pursuant to section 1592(a)(1)(B) and thus the government cannot rely thereon. Additionally, if this Court were to allow the government to now allege a new section 1592(a)(1)(B) claim for relief against Mr. Ng for aiding and abetting, such permission would be unduly prejudicial to Mr. Ng as he has spent the last three years conducting discovery necessary only to make a defense pursuant to section 1592(a)(1)(A), what was explicitly pled. Furthermore, the statute of limitations has run on such claim for relief.

Even if the government alleges in its opposition that it did allege violation of section 1592(a)(1)(B), which it didn't, such argument fails as a matter of law. "[L]iability for aiding or abetting requires, *inter alia,* proof of knowledge of unlawfulness, also articulated as intent to

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

violate the law". <u>United States v. Hitachi Am., Ltd.</u>, 172 F.3d 1319, 1337 (Fed. Cir. 1999) (A person cannot aid and abet negligent conduct.) <u>Id</u> at 1337-38. The <u>Hitachi</u> court held that one cannot aid and abet a negligent or grossly negligent violation of section 1592(a). <u>Id</u>. Here, the Government has only alleged Defendants are liable for grossly-negligent or negligent violation of section 1592 and did not allege Defendants are liable for fraudulent violation. As a result, Mr. Ng, as a matter of law, cannot be liable for aiding and abetting a negligent or grossly negligent violation of section 1592. Nevertheless, as clearly established above, no facts exist and the government is in possession of any evidence establishing Mr. Ng aided and abetted any violation of section 1592(a)(1)(A). Mr. Ng was never involved in the classification, importation or entry process of Ng Branding or Sterling.

<u>Piercing the Corporate Veil & Alter Ego are not pled as Claims for Recovery</u>

An alternative theory upon which a corporate officer or director may be liable for the acts of the corporate entity would be piercing the corporate veil and/or alter ego. Again, the Government has not alleged in its Complaint that the corporate veil should be pierced or that Mr. Ng is the alter ego of Ng Branding or Sterling. (<u>See</u> <u>generally</u> Complaint.) The Government has only alleged Mr. Ng personally and directly violated section 1592(a)(1)(A), albeit, without providing any factual support. As such, the Government has waived all arguments related to piercing the corporate veil and alter ego. USCIT Rule 8(a)(2)-(3); <u>Holley v. United States</u>, 124 F.3d 1462, 1465 (Fed. Cir. 1997).

IV. **<u>As a Matter of Law, Mr. Ng cannot be Liable for alleged unpaid Customs Duties and Civil Penalties pursuant to 19 U.S.C. 1592(c) and (d)</u>**

As a matter of law, Mr. Ng cannot be held liable for alleged unpaid customs duties and civil penalties under 19 U.S.C. § 1592(c) or (d) because sections 19 U.S.C. 1592(c) and (d) are

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

contingent on finding of Mr. Ng's liability pursuant to 19 U.S.C. § 1592(a)(1)(A), which is also barred as a matter of law.

<u>**CONCLUSION**</u>

As a matter of law, Mr. Ng cannot be found liable pursuant to 19 U.S.C. § 1592(a)(1)(A) because all the evidence supports the fact that (1) he is not a customs agent or the importer of record and cannot be found to have entered the goods; and (2) he never personally performed any negligent or grossly negligent act at the threshold of the process of entry to cause merchandise to enter the United States. Consequently, Mr. Ng cannot be held liable for any alleged unpaid customs duties and civil penalties pursuant 19 U.S.C. § 1592(c) or (d). The government has pled no other theories upon which recovery may be granted. As a result, this Court should grant Mr. Ng's Motion for Summary Judgment pursuant to USCIT R. 56 as the government has not and cannot present any relevant, admissible, and specific evidence demonstrating a genuine issue for trial.

Dated: November 12, 2015

Respectfully submitted,

/s/ Thomas A. Fasel

Thomas A. Fasel, Esq.
FASEL LAW
610 Newport Center Drive, Ste 810
Newport Beach, CA 92660
Telephone: (949) 706-3188
Facsimile: (949) 606-7002
Email: taf@fasellaw.com

Attorneys for Defendants Sterling Footwear, Inc., NG Branding, LLC and Alex Ryan Ng

# CERTIFICATE OF COMPLIANCE

This memorandum of points and law in support of Defendant Alex Ryan Ng Motion for Summary Judgment contains 11,611 words and is compliance with the word limitation contained in the United States Court of International Trade Chambers Procedures, Procedure 2(B)(1) limiting movant's memorandum to not more than 14,000 words. The undersigned has relied on the word count of the word-processing systems used to prepare the memorandum.

_____
Thomas A. Fasel

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he filed with the Court and served a copy of the foregoing to all counsel via CM/ECF on November 12, 2015.

FASEL LAW
610 Newport Center Drive, Suite 810, Newport Beach, California 92660
Telephone: 949-706-3188