Slip Op. 17-141

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES,<br><br>                    Plaintiff,<br><br>          v.<br><br>STERLING FOOTWEAR, INC., *et al.*,<br><br>                    Defendants. | Before: Mark A. Barnett, Judge<br><br>Court No. 12-00193 |

## OPINION AND ORDER

[Defendant Alex Ryan Ng's motion for summary judgment is denied.  Plaintiff's cross-motion for summary judgment as to Alex Ryan Ng is denied, and Plaintiff's motion for summary judgment as to Sterling Footwear, Inc. and Ng Branding, LLC is granted in part and denied in part.]

Dated:  October 12, 2017

<u>Mikki Cottet</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Plaintiff.  With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director.  Of counsel on the brief was <u>Meredith A. Johnson</u>, Attorney, Office of the Associate Chief Counsel, U.S. Customs and Border Protection, Long Beach, CA.

<u>Thomas Andrew Fasel</u>, Fasel Law, of Newport Beach, CA, argued for Defendants.

Barnett, Judge:  The United States of America ("Plaintiff" or the "Government")

sued Sterling Footwear, Inc. ("Sterling"), Alex Ryan Ng ("Ng"), and Ng Branding, LLC

("Ng Branding") (collectively, "Defendants"), to recover unpaid duties and a monetary

penalty pursuant to section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592

(2012),[1] and interest pursuant to 19 U.S.C. § 1505, on 337 entries of footwear it

contends Sterling incorrectly classified as "rubber tennis shoes" pursuant to subheading

6402.91.40 of the Harmonized Tariff Schedule of the United States ("HTSUS").[2]  *See*

*generally* Compl., ECF No. 2.  Ng seeks summary judgment as to his personal liability.

Def. Alex Ng's Mot. for Summ. J. and Def. Alex Ng's Mem. of Law and Points of

Authorities in Supp. of Mot. for Summ. J. ("Ng's MSJ"), ECF No. 53.[3]  The Government

cross-moves for summary judgment against all Defendants.  Pl.'s Cross-Mot. for Summ.

J. Against Def. Alex Ng and Mot. for Summ. J. Against Defs. Sterling Footwear, Inc. and

Ng Branding, LLC ("Pl.'s XMSJ"), ECF No. 62.  The court has subject matter jurisdiction

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2012 edition, which are the same in all relevant respects to the versions in effect when the entries were made.

[2] HTSUS 6402.91.40 covers, in pertinent part:

> Other footwear with outer soles and uppers of rubber or plastics:
>> Covering the ankle:
>>> Having uppers of which over 90 percent of the external surface area (including any accessories or reinforcements such as those mentioned in note 4(a) to this chapter) is rubber or plastics except [] footwear having a foxing or a foxing-like band applied or molded at the sole and overlapping the upper [. . . .]………………………..6%

"A foxing is a strip of material [that is] separate from the sole and upper, that secures the joint where the upper and sole meet."  U.S. Customs and Border Protection, *What Every Member of the Trade Community Should Know About: Footwear*, *An Informed Compliance Publication*, at 14 (April 2012).  "A foxing-like band has the same or nearly the same appearance, qualities, or characteristics as a foxing."  *Id.*  However, a foxing-like band "does not have to be a separate component and is often part of the unit-molded sole.  A foxing-like band must be applied or molded at the sole, overlap the upper, and substantially encircle the entire shoe."  *Id.*; *see also* Pl.'s XMSJ at 4 n.3 (quoting the definition of "foxing" from an earlier edition of Customs' Informed Compliance Publication).

[3] Ng's "motion" consisted of a table of contents and table of authorities.  Ng subsequently filed a formal motion.  Def. Alex Ng's Mot. for Summ. J., ECF No. 96.

pursuant to 28 U.S.C. § 1582.  For the reasons discussed below, Ng's motion for

summary judgment will be denied; the Government's cross-motion for summary

judgment against Ng will be denied; and the Government's motion for summary

judgment against Sterling and Ng Branding will be granted in part and denied in part.

BACKGROUND

**I.      Material Facts Not Genuinely in Dispute**

Pursuant to U.S. Court of International Trade ("USCIT") Rules 56(c)(1)(A) and

56.3(a), movants are to present material facts as short and concise statements, in

numbered paragraphs, with citations to "particular parts of materials in the record" as

support.  *See* USCIT Rule 56.3(a)("factual positions described in Rule 56(c)(1)(A) must

be annexed to the motion in a separate, short and concise statement, in numbered

paragraphs").  In responsive papers, the opponent "must include correspondingly

numbered paragraphs responding to the numbered paragraphs in the statement of the

movant."  USCIT Rule 56.3(b).  "If a party fails to properly . . . address another party's

assertion of fact as required by Rule 56(c), the court may . . . consider the fact

undisputed for purposes of the motion."  USCIT Rule 56(e)(2).

Parties submitted separate statements of undisputed material facts with their

respective motions and responses to the opposing party's statements.  *See* Def. Alex

Ng's Statement of Mat. Facts Not in Dispute Pursuant to USCIT [Rule] 56.3 ("DSOF"),

ECF No. 53-1; Pl.'s Resp. to Def. Alex Ng's Rule 56.3 Statement ("Pl.'s Resp. to

DSOF"), ECF No. 64; Pl.'s Rule 56.3 Statement ("PSOF"), ECF No. 63; Defs. Sterling

Footwear, Inc., Alex Ryan Ng and Ng Branding, LLC's Joint Resp. to Pl.'s USCIT [Rule]

56.3 Statement ("Defs.' Resp. to PSOF"), ECF No. 84-3.  Upon review of Parties' facts (and supporting exhibits),[4] the court finds the following material facts not genuinely disputed.[5]

### A.  Sterling

On April 23, 2007, Ng incorporated Sterling, an importer and wholesaler of footwear, in the State of California.  PSOF ¶¶ 1, 5; Defs.' Resp. to PSOF ¶¶ 1, 5; *see also* PSOF ¶ 11; Defs.' Resp. to PSOF ¶ 11 (Ng created and founded Sterling).  Sterling began importing footwear on July 17, 2007.  PSOF ¶ 50; Defs.' Resp. to PSOF ¶ 50; Pl.'s Ex. 1 (Decl. of Benjamin L. Whitney) ("Whitney Decl."), ECF No. 62-2, Attach. A (Letter from Benjamin Whitney, Import Specialist, to Jonathan Erece, Supervisory Import Specialist, regarding a proposed penalty for Sterling) (Dec. 28, 2009) ("Proposed Penalty Letter") at 2, ECF No. 62-3 (providing Sterling's importer of record number).  From July 2007 to October 2009, Sterling made 363 entries of footwear that entered the United States at the Los Angeles/Long Island Beach seaport and the Los Angeles International Airport.  PSOF ¶ 51; Defs.' Resp. to PSOF ¶ 51.

---

[4] Many of the material facts are taken from Plaintiff's statement of facts and Defendants' response thereto.  Ng's statement of facts consisted almost entirely of *immaterial* facts regarding actions Ng asserts he did not take or facts that are otherwise disputed.  *See generally* DSOF.

[5] Citations are provided to the relevant paragraph number of the undisputed facts and response; internal citations generally have been omitted.  Citations to the record are provided when a fact is admitted based on lack of knowledge, or to the extent the fact is supported by the proponent's cited documents.  Citations to the record are also provided when a fact, though not admitted by both Parties, is uncontroverted by record evidence.

Sterling imported and sold several types of shoes, including "flip flops, sandals, heels, boots, and sneakers (high tops and low tops), made from a variety of textiles, leathers, rubber, or combination of materials."  PSOF ¶ 35; Defs.' Resp. to PSOF ¶ 35; *see also* Pl.'s Ex. 9, ECF Nos. 93-5, 93-6 (photographs of samples of Sterling's 2009 footwear); Pl.'s Physical Ex. 1, ECF No. 95 (physical samples of Sterling's 2009 footwear). Sterling created its own footwear designs, which were manufactured in Vietnam to Sterling's specifications.  PSOF ¶ 36; Defs.' Resp. to PSOF ¶ 36.  Sterling sold its footwear to Philip Simon Design, Inc. ("Philip Simon"), using the brand name "Ed Hardy."  PSOF ¶ 37; Defs.' Resp. to PSOF ¶ 37.  Philip Simon placed orders with Sterling for "specific footwear style numbers," which corresponded to specific designs, colors, and material.  PSOF ¶ 38; Defs.' Resp. to PSOF ¶ 38.  Before satisfying purchase orders, Sterling had samples made "to ensure that its footwear was manufactured to its specifications and met its quality control standards."  PSOF ¶ 39; Defs.' Resp. to PSOF ¶ 39.

Ng was Sterling's president, chief executive officer, and majority shareholder (owning at least 95% of the shares).  PSOF ¶¶ 2, 13; Defs.' Resp. to PSOF ¶¶ 2, 13; *see also* DSOF ¶¶ 1-2; Pl.'s Resp. to DSOF ¶¶ 1-2; Ng's Ex. D (deposition of Ty V. Ngo) ("Ngo Dep.") at 38:22-39:14, ECF No. 53-3 (testifying to a five percent ownership interest in Sterling).[6]  Ng controlled Sterling' finances, the distribution of its dividends, and the sale of its assets.  PSOF ¶ 15; Defs.' Resp. to PSOF ¶ 15; *see also* PSOF

---

[6] Mr. Ngo is Ng's brother; at some time Ng changed his last name from Ngo to Ng.  Ngo Dep. at 10:2-9.

¶¶ 12, 21(1) (Ng determined who owned Sterling's shares); Defs.' Resp. to PSOF ¶¶ 12,

21(1).  Ng was the "ultimate decision-maker" for certain of Sterling's business decisions,

including the creation of its production department, which was responsible for handling

entries; hiring and promoting employees, and delegating authority thereto; and the

design, development, and manufacture of Sterling's imported footwear.  PSOF

¶ 21(2),(4),(6); Defs.' Resp. to PSOF ¶¶ 21(2),(4),(6); *see also* PSOF ¶ 31; Defs.' Resp.

to PSOF ¶ 31 ("Ng actively participated in" the design and manufacture of Sterling's

footwear); DSOF ¶ 88; Pl.'s Resp. to DSOF ¶ 88 ("[] Ng set up a production department

at Sterling's offices."); Ng's Ex. Y (Decl. of Alex Ng) ("Ng Decl.") ¶ 7, ECF No. 53-7

(Ng's "primary responsibilit[ies]" consisted of footwear design, "marketing, sales and

establishing relationships with Chinese manufactur[ers]").

In August 2007, Ng hired Janet Huynh ("Ms. Huynh") "to handle production, i.e.,

to work with Sterling's customs brokers to enter Sterling's footwear."  PSOF ¶ 24; Defs.'

Resp. to PSOF ¶ 24.  Three months later, Ms. Huynh became Sterling's general

manager; she subsequently hired Nancy Ng[7] "to oversee Sterling's entries and to work

with Sterling's customs brokers."  PSOF ¶ 41; Defs.' Resp. to PSOF ¶ 41; DSOF ¶ 111;

Pl.'s Resp. to DSOF ¶ 111; *see also* DSOF ¶ 96; Pl.'s Resp. to DSOF ¶ 96 (Ms. Huynh

and Ms. Ng "were the only members of Sterling's production department").  Ms. Ng had

prior experience working for a customs broker and filing entries on clients' behalf.

PSOF ¶ 42; Defs.' Resp. to PSOF ¶ 42.

---

[7] Ms. Ng is not related to Defendant Ng.  Ngo Dep. at 10:14-15; Ng Decl. ¶ 4.

### B. The Subject Entries

Plaintiff asserts that, of Sterling's 363 footwear entries, 337 entries, which are at issue here, asserted classification pursuant to HTSUS 6402.91.40.  PSOF ¶¶ 52, 56. USCIT Rule 56(c)(1)(A) provides that "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by [] citing to particular parts of materials in the record . . . ."  In accordance with Rule 56(c)(1)(A), Plaintiff offers several pieces of evidence supporting its assertion that Sterling asserted classification pursuant to HTSUS 6402.91.40 for the 337 entries.  *See* Whitney Decl. ¶¶ 19-71 (discussing CBP's examination of certain of Sterling's entries); Whitney Decl. ¶ 90 (averring that CBP reviewed all of Sterling's entries); Whitney Decl. ¶¶ 91-94 (discussing CBP's processing of rate advances for all entries that had not yet liquidated or were within 90 days of liquidation, and CBP's examination of already-liquidated entries); Whitney Decl. ¶ 112 (averring the amount of unpaid duties stemming from the subject 337 entries); Proposed Penalty Letter at 1; Proposed Penalty Letter, Ex. D, ECF No. 62-3 (detailing a rate advance for one entry); Proposed Penalty Letter, Ex. M, ECF No. 62-4 (detailing rate advances for 186 entries); Proposed Penalty Letter, Ex. S, ECF No. 62-6 (summarizing the 337 subject entries).

Defendants assert, without citing any evidentiary support, that Sterling entered "certain footwear" pursuant to HTSUS 6402.91.40.  Defs.' Resp. to PSOF ¶ 56.  "If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; [or] (2) consider the fact undisputed for purposes of the motion."  USCIT Rule 56(e)(1)-(2).

At oral argument, the court endeavored to ascertain whether there was a genuine dispute about the classification asserted in the subject entry summaries, which were not made part of the summary judgment record.  Plaintiff informed the court that the entry summaries had been produced during discovery and Defendants had not disputed their accuracy.  Oral Arg. 5:30-6:02.[8]  Defendants asserted that "there might be a dispute" about the entry summaries, but that defense counsel had not reviewed them.  Oral Arg. 4:25-4:40, 18:49-18:56.  When pressed for a legal basis for disputing Plaintiff's assertion regarding classification, Defendants could not provide one.  Oral Arg. 21:24-21:44, 37:05-37:43.  Because Defendants failed to properly address Plaintiff's factual assertion on paper, and failed again when given the opportunity to do so at oral argument, the court considers it undisputed, for purposes of summary judgment, that the 337 subject entries asserted classification pursuant to HTSUS 6402.91.40.  *See* USCIT Rule 56(e)(2).

Plaintiff further asserts that Sterling described the footwear as "rubber tennis shoes."  PSOF ¶ 55 (citing Whitney Decl. ¶ 79, and Proposed Penalty Letter). Defendants again qualify their response, asserting that Sterling described "some of its footwear as 'rubber tennis shoes.'"  Defs.' Resp. to PSOF ¶ 55.  Defendants' response, which implies that not all entries described the footwear as "rubber tennis shoes," lacks reference to any evidentiary support.[9]  Accordingly, the court considers it undisputed for

---

[8] Citations to the Oral Argument indicate time stamps from the audio recording.
[9] Defendants also object to Plaintiff's failure to identify the 337 entries.  Defs.' Resp. to PSOF ¶ 55.  Notwithstanding Plaintiff's apparent production of the entry summaries during discovery and Defendants' failure to review them, Oral Arg. 4:25-4:40, 18:49-

purposes of summary judgment that Sterling described the footwear as "rubber tennis shoes."

In fact, the subject entries consisted of "athletic shoes, slip on shoes, boots, and other styles of shoes that had uppers made up of [] canvas, leather, plastic, or combinations of materials, and in most cases had foxing or foxing-like bands."  PSOF ¶ 57; Pl.'s Physical Ex. 1; Pl.'s Ex. 9.[10]   The total entered value of the merchandise in the subject entries was $12,298,695.00.  Proposed Penalty Letter, Ex. S; *see also* PSOF ¶ 53; Defs.' Resp. to PSOF ¶ 53 (the total entered value exceeded $12,000,000).

### C.  Customs' Investigation of Sterling's Entries

From May to August 2009, Customs import specialists examined samples of footwear from Sterling's entries.  PSOF ¶ 58; Defs.' Resp. to PSOF ¶ 58; Whitney Decl. ¶ 19.  On June 4, 2009, Customs issued to Sterling a notice of action covering one entry classified pursuant to HTSUS 6402.91.40, but which consisted of "tennis shoe[s]" with a "textile upper, rubber sole and foxing band."  PSOF ¶¶ 65-66; Defs.' Resp. to PSOF ¶¶ 65-66; Proposed Penalty Letter, Ex. D.  On July 9, 2009, Customs issued to Sterling

---

18:56, the 337 entries were identified in an exhibit to the Complaint and the Proposed Penalty Letter.  *See* Compl., Attach. A, ECF No. 2-1; Proposed Penalty Letter, Ex. S.
[10] Once again, Defendants object to Plaintiff's failure to identify the 337 entries, and "den[y] that [Sterling] misclassified any entries."  Defs.' Resp. to PSOF ¶ 57. Defendants do not, however, directly address Plaintiff's assertion regarding the composition of the entered footwear, which is consistent with the type of footwear Defendants admit Sterling imported, *see* PSOF ¶ 35; Defs.' Resp. to PSOF ¶ 35, and the samples submitted to the court, *see* Pl.'s Physical Ex. 1.  Because Defendants failed to properly address Plaintiff's factual assertion, which has evidentiary support, the court considers the assertion undisputed for purposes of summary judgment.  *See* USCIT Rule 56(e).

a second notice of action covering four additional entries.  PSOF ¶ 69; Defs.' Resp. to

PSOF ¶ 69; Whitney Decl. ¶ 31; Proposed Penalty Letter, Ex. E.  Ng signed and

tendered a check for the rate-advanced[11] duties for those four entries.  PSOF ¶ 70;

Defs.' Resp. to PSOF ¶ 70.

On July 29, 2009, Customs officials met with Sterling representatives, Ms. Huynh

and Ms. Ng, and Sterling's customs broker, Scott Kauffman, of Seattle Logistics, Inc.

("Seattle Logistics").   PSOF ¶¶ 75-76; Defs.' Resp. to PSOF ¶¶ 75-76.  At the meeting,

Customs officials "(1) displayed samples obtained from Sterling's entries; (2) discussed

the reasons for the rate advances and the necessity for post-entry amendments to

correct all unliquidated entries; and (3) provided informed compliance handouts on

reasonable care and the classification of footwear to Sterling's representatives."  PSOF

¶ 76; Defs.' Resp. to PSOF ¶ 76; Whitney Decl. ¶ 76; Proposed Penalty Letter at 5;

Proposed Penalty Letter, Ex. J at 1, ECF No. 62-4 (July 29, 2009 meeting summary);

Pl.'s Ex 2 (Decl. of Dale Scott Kauffman) ("Kauffman Decl.") ¶¶ 23, 25, ECF No. 62-7.

Upon viewing the samples, Mr. Kauffman determined that Sterling's entries had been

misclassified.  PSOF ¶ 77; Defs.' Resp. to PSOF ¶ 77; Kauffman Decl. ¶ 24.  During the

meeting, Sterling agreed that Mr. Kauffman would submit post-entry amendments for all

entries.  PSOF ¶ 78; Defs.' Resp. to PSOF ¶ 78; Whitney Decl. ¶¶ 77-78; Kauffman

Decl. ¶¶ 26; *see also* Proposed Penalty Letter, Ex. J at 1.  However, no post-entry

---

[11] An entry is rate-advanced when it is "liquidate[d] at a higher rate" than the rate
associated with the claimed classification. *See United States v. Horizon Prods. Int'l,
Inc.*, 39 CIT ___, ___, 82 F. Supp. 3d 1350, 1354 (2015).

amendments were submitted.  PSOF ¶ 79; Defs.' Resp. to PSOF ¶ 79; Whitney Decl.

¶ 90; Kauffman Decl. ¶¶ 27-28.

The absence of post-entry amendments prompted CBP to review all of Sterling's

entries.  Whitney Decl. ¶ 90; *see also* PSOF ¶ 83; Defs.' Resp. to PSOF ¶ 83 (CBP

reviewed Sterling's 2007 and 2008 entries after determining that 2009 entries had been

misclassified).  From September to November 2009, Customs issued to Sterling several

additional notices of action covering 186 entries made in 2008 and 2009 that CBP

determined had been incorrectly classified under HTSUS 6402.91.40.  Proposed

Penalty Letter, Ex. M.  Relying on Sterling's footwear samples, online research

regarding specific style numbers, and information from Sterling about "the method used

to create style numbers," Customs determined that Sterling had misclassified 41 entries

in 2007, 197 entries in 2008, and 99 entries in 2009.  PSOF ¶¶ 83-84; Defs.' Resp. to

PSOF ¶¶ 83-84;[12] Whitney Decl. ¶¶ 91, 94-99, 112.  Sterling protested 57[13]

---

[12] Defendants "admit[] that CBP may have made the erroneous determination that some
of its entries in 2007 and 2008 were misclassified," but contends that Sterling's entries
were properly classified.  Defs.' Resp. to PSOF ¶ 84 (citing Defs.' Ex. A (Harmonized
Tariff Services, LLC's ("HTS") Lab Test of Subject Footwear) ("HTS Lab Report"), ECF
No. 84-2.  In other words, Defendants do not dispute that Customs made a particular
determination, however, they dispute the correctness of that determination.  The court
discusses Defendants' assertions disputing any misclassification in its examination of
whether Plaintiff has proved a false statement).  *See infra*, Discussion Section IV.B.2.
[13] In its brief, Plaintiff contends that Sterling protested 46 reliquidations.  Pl.'s XMSJ at
10 (citing the Proposed Penalty Letter generally).  The Proposed Penalty Letter refers to
50 protests of reliquidations on the basis of timeliness.  *See* Proposed Penalty Letter at
9.  However, Customs demand for payment from Sterling's surety, which was appended
to the July 2, 2010 letter from Taylor Pillsbury, Esq., counsel for Sterling's surety, to
Elon Pollack, Esq., Sterling's counsel, notes 57 open protests.  *See* Pl.'s Ex. 8 at ECF
pp. 4-8, ECF No. 93-4.

reliquidations on the basis of timeliness.  PSOF ¶¶ 105-06; Defs.' Resp. to PSOF

¶¶ 105-06; Proposed Penalty Letter at 9; Pl.'s Ex. 7, ECF No. 93-3 (protests of some of

Sterling's entries); *see also* Pl.'s Ex. 8 (July 2, 2010 letter from Taylor Pillsbury, Esq.,

counsel for Sterling's surety, to Elon Pollack, Esq., Sterling's counsel).(noting that

Sterling has contested the timeliness of certain reliquidations but not the substance of

Customs' action).  Customs approved 17 protests.  Pl.'s Ex. 5, ECF No. 62-10.[14]

In October 2009, CBP contacted Sterling's nine customs brokers and requested

that they respond to a questionnaire asking, in part, who determined the classifications

for the imported footwear.  PSOF ¶ 88; Defs.' Resp. to PSOF ¶ 88; Whitney Decl. ¶ 102.

Eight brokers responded.  Whitney Decl. ¶¶ 103, 105-06.

Plaintiff asserts that "most of the customs brokers stated that they had entered

Sterling's footwear under the tariff provisions provided by Sterling."  PSOF ¶ 89 (citing

Whitney Decl. ¶¶ 102-110; Proposed Penalty Letter at 7-8, 13 & Ex. P)[15].  Plaintiff

further asserts that "[t]wo of Sterling's customs brokers replied that classification

provisions were given to them by Seattle Logistics," PSOF ¶ 90 (citing Whitney Decl.

¶¶ 102-110; Proposed Penalty Letter at 7-8, 13 & Ex. P; Kauffman Decl. ¶ 9, 30), who in

turn had received them from Sterling, PSOF ¶ 91 (citing Whitney Decl. ¶ 106).

---

[14] Plaintiff's Exhibit 5 consists of CBP's penalty notices and payment demands.  A chart
of 17 approved protests reflecting amounts deducted from the payment demand is
located at ECF page numbers 26, 64, and 88.

[15] Exhibit P to the Proposed Penalty Letter consists of emails from Sterling's brokers
responsive to CBP's inquiries, and emails from Sterling to some of the brokers, which
were appended to the brokers' emails.  *See* Proposed Penalty Letter, Ex. P, ECF No.
62-5.

Defendants object to Plaintiff's assertions regarding the brokers' responses as "statement[s that] contain[] inadmissible hearsay evidence."  Defs.' Resp. to PSOF ¶¶ 89-91.

Pursuant to USCIT Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Thus, for summary judgment purposes, the inquiry is whether the cited evidence may be reduced to admissible form, not whether it is admissible in the form submitted at the summary judgment stage.  USCIT Rule 56(c)(2).

Pursuant to USCIT Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  The Whitney Declaration is based on the Customs official's personal knowledge of the emails he received from Sterling's brokers.  *See* Whitney Decl. ¶¶ 103-107, 109-10 (citing Proposed Penalty Letter, Ex. P).  It is also made under "penalty of perjury" and is said to be "true and correct."  Whitney Decl. at 25; 28 U.S.C. § 1746 (governing unsworn declarations made under penalty of perjury).  There is no indication that the declarant is not "competent" to testify; thus, the issue is whether the affidavit states "facts that would be admissible in evidence."  USCIT Rule 56(c)(4).[16]

---

[16] Likewise, the Kauffman Declaration is based on Mr. Kauffman's personal knowledge of Seattle Logistics' entries of Sterling's merchandise, is made under "penalty of perjury" and is said to be "true and correct," and there is no indication that the declarant is not "competent" to testify.  *See generally* Kauffman Decl.

Hearsay is an out of court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is inadmissible at trial unless a federal statute, Federal Rule of Evidence, or other rule "prescribed by the Supreme Court" provides otherwise. Fed. R. Evid. 802. Nonetheless, a court "may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (citation omitted). *Cf.* USCIT Rule 56(c)(2).

The statements by Sterling's customs brokers and freight forwarder as contained in emails to the customs official are hearsay to the extent they are used to prove the truth of the matter asserted, that is, that Sterling (or Seattle Logistics) provided the customs brokers and freight forwarder with the tariff classifications. *See* Proposed Penalty Letter, Ex. P at ECF pp. 11, 14, 25, 28, 32, 40, 54. However, "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Jones*, 683 F.3d at 1294 (nevertheless declining to consider a hearsay statement when the declarant's sworn deposition testimony contradicted the hearsay statement). There is no indication that the declarants--the brokers and freight forwarder--would be unable to testify at trial. *Cf. J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d. Cir. 1990) (district court erred in refusing to consider hearsay statements contained in an affidavit for purposes of summary judgment when "there [was] no indication that [the declarants of the hearsay statements] would be unavailable to testify at trial").

Statements by Sterling employees contained in emails to the brokers and freight forwarder and subsequently sent to the customs official are not hearsay, however.  The statements, by Ms. Huynh and Ms. Ng, are "offered against [the] opposing party and . . . [were] made by the party's . . . employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).[17]  Accordingly, Defendants' hearsay objections lack merit for purposes of considering the cross-motions for summary judgment.

Defendants also deny Plaintiff's factual assertions on the basis that "Sterling always worked with the customs brokers to make classification determinations."  Defs.' Resp. to PSOF ¶ 89 (citing Ng's Ex. N, ECF No. 53-6; Ng's Ex. W, ECF No. 53-7; Ng's Ex. B (Deposition of Janet Huynh) ("Huynh Dep.") at 7:8-14; 24:9-25:8; 51:15-17; 41:1-11, ECF No. 53-3; Ng's Ex. A (Deposition of Nancy Ng) ("Nancy Ng Dep.") at 28:4-6; 33:2-8; 29:6-22; 45:5-47:3; 47:15-22; 57:20-60:4; 61:12-62:17, ECF No. 53-3).  The substance of Defendants' denial goes to the accuracy of the brokers' statements, not whether they were made.  Moreover, Defendants' cited evidence does not actually rebut Plaintiff's assertion or the accuracy of the brokers' statements referenced therein; in fact, it mostly supports it.[18]  In sum, Defendants have not shown that Plaintiff relies on

---

[17] Fed. R. Evid. 801(d) governs statements "that are not hearsay."

[18] The cited portions of Ms. Ng's and Ms. Huynh's deposition testimony mostly contain statements regarding their work at Sterling generally; however, Ms. Ng testified (in the cited portions and elsewhere) that she provided tariff provisions to Sterling's brokers and freight forwarders.  *See* Nancy Ng Dep. at 57:21-62:17.  In Ng's Exhibit N, Ms. Ng provides Mr. Kauffman with tariff provisions for several styles and asks for assistance classifying just one style.  Ng's Ex. N.  Moreover, the email is dated July 27, 2009, two years after Sterling began entering footwear, and thus is unsupportive of what Sterling

evidence that would be inadmissible at trial, and have not shown that Plaintiff's factual

assertions are genuinely disputed.   Thus, the court considers Plaintiff's factual

assertions regarding the brokers' statements as undisputed for purposes of summary

judgment.  *See* PSOF ¶¶ 89-91.

### D.  Ng Branding

In February 2009, Ng organized Ng Branding as a limited liability company in the

State of California.  PSOF ¶ 3; Defs.' Resp. to PSOF ¶ 3; Ng's Ex. R (Ng Branding's

Articles of Organization), ECF No. 53-6.  Ng was the sole investor in Ng Branding and

its managing member, and held the majority of its ownership.  PSOF ¶ 4; Defs.' Resp. to

PSOF ¶ 4.  Like Sterling, Ng Branding imported footwear for wholesale.  PSOF ¶ 5;

---

"always" did.  *See id.*  Ng's Exhibit W is a copy of the Proposed Penalty Letter.  Page 8
of the Proposed Penalty Letter refers to a statement made by Ms. Huynh and Ms. Ng
during an October 30, 2009 meeting with Customs' officials that they rely on their
brokers to classify *Ng Branding's* footwear, they do not, however, state that they relied
on their brokers to classify *Sterling's* footwear.  *See* Ng's Ex. W at 8.  Moreover, the
meeting took place after Sterling filed its last entry on October 8, 2009.  PSOF ¶ 8;
Defs.' Resp. to PSOF ¶ 8; Whitney Decl. ¶ 79.

"When ruling on a motion for summary judgment, all of the nonmovant's evidence
is to be credited and all justifiable inferences are to be drawn in the nonmovant's favor."
*Netscape Comm.'s Corp. v. Konrad*, 295 F.3d 1315, 1319 (Fed. Cir. 2002).  At most,
however, Defendants have shown that, on one occasion more than two years after
Sterling began entering footwear, Sterling asked its broker for classification advice as to
one style on an unidentified entry.  *See* Ng's Ex. N; Oral Arg. at 54:39-57:01 (when
given the opportunity to identify the entry associated with Sterling's request for advice,
defense counsel was unable to do so).  From this, the court cannot reasonably infer that
Sterling "always worked with the customs brokers to make classification
determinations," particularly when, in the same email, Sterling also instructed the broker
to enter certain styles pursuant to HTSUS 6402.91.40 *after* Sterling had received
notices of action for incorrectly entering one of those styles under that subheading.  *See
id.*; Proposed Penalty Letter, Ex. D; Whitney Decl. ¶ 24.

Defs.' Resp. to PSOF ¶ 5.   From February to October 2009, Sterling and Ng Branding

had common shareholders, directors/managers, officers, business departments,

employees, manufacturers, customers, business address, company suites, equipment,

and telephone numbers.  PSOF ¶¶ 8-9; Defs.' Resp. to PSOF ¶¶ 8-9; *see also*

Proposed Penalty Letter, Ex. N (emails from Ms. Ng to a Customs official regarding

Sterling's footwear wherein Ms. Ng utilized an email address associated with Ng

Branding).

### E.  Administrative Proceedings

On March 29, 2012, CBP issued to Sterling and Ng pre-penalty notices and a

demand for payment of unpaid duties.  PSOF ¶ 108; Defs.' Resp. to PSOF ¶ 108; Pl.'s

Ex. 5 at 1-26.[19]  On April 9, 2012, CBP issued penalty notices and a second payment

demand to Sterling and Ng, tentatively determining gross negligence as the level of

culpability.  PSOF ¶ 114; Defs.' Resp. to PSOF ¶ 114; Pl.'s Ex. 5 at ECF pp. 27-34.  On

June 20, 2012, CBP issued an amended pre-penalty notice also naming Ng Branding

and alleging negligence as an alternative determination of culpability.  PSOF ¶ 116;

Defs.' Resp. to PSOF ¶ 116; Pl.'s Ex. 5 at ECF pp. 35-64.  On June 27, 2012, CBP

issued Ng, Ng Branding, and Sterling an amended penalty notice.  PSOF ¶ 118; Defs.'

Resp. to PSOF ¶ 118; Pl.'s Ex. 5 at ECF pp. 65-88.  Sterling's surety paid $100,000

towards the unpaid duties; no party has paid the remaining amount.  PSOF ¶ 110;

---

[19] Customs sought payment of $1,666,824.85 in unpaid duties, which consisted of an actual loss of revenue equal to $2,003,080.12, minus $336,255.27 attributable to the 17 approved protests.  *See* Pl.'s Ex. 5 at ECF pp. 1, 26.

Defs.' Resp. to PSOF ¶ 110; *see also* Pl.'s Ex. 8 at 1-2 (explaining the surety's liability in the matter).

## II.      Procedural History

Plaintiff commenced this enforcement action on July 16, 2012.  Summons, ECF No. 1; Compl.  On December 18, 2012, the court denied Ng's motion to dismiss the complaint.  Order (Dec. 18, 2012), ECF No. 22.  On January 10, 2013, Defendants answered the complaint.  Answer and Jury Demand of Sterling Footwear, Inc., Ng Branding LLC and Alex Ryan Ng, ECF No. 25.

On November 12, 2015, Ng moved for summary judgment.  Ng's MSJ.  On February 22, 2016, Plaintiff cross-moved for summary judgment against Ng and moved for summary judgment against Sterling and Ng Branding.  Pl.'s XMSJ.  The motions are fully briefed, and the court heard oral argument on July 13, 2017.  Docket Entry, ECF No. 100.

### DISCUSSION

## I.      Standard of Review

This case is brought by the Government against Defendants to recover unpaid duties and a monetary penalty owing from allegedly misclassified entries pursuant to 19 U.S.C. § 1592.  The Court of International Trade reviews all issues in actions brought for the recovery of a monetary penalty pursuant to 19 U.S.C. § 1592 *de novo* and on the basis of the record made before the court.  19 U.S.C. § 1592(e)(1); 28 U.S.C. § 2640(a); *see also United States v. ITT Indus., Inc.*, 28 CIT 1028, 1035, 343 F. Supp. 2d 1322, 1329 (2004), *aff'd*, 168 F. App'x 942 (Fed. Cir. 2006).

Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." USCIT Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The court must view the evidence in the light most favorable to the nonmovant and may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986); *Netscape Comm.'s Corp.*, 295 F.3d at 1319.  When both parties move for summary judgment, the court generally must evaluate each party's motion on its own merits and draw all reasonable inferences against the party whose motion is under consideration.  *JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000).

## II.    Legal Framework for Recovery Actions

In relevant part, § 1592 bars the grossly negligent or negligent entry, introduction, or attempt to enter or introduce, merchandise into the commerce of the United States by means of a material false statement or material omission.  19 U.S.C. § 1592(a)(1)(A).[20]

---

[20] In full, § 1592(a)(1) provides:
    (a) Prohibition
        (1) General rule
        Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence--
            (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of--
                (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
                (ii) any omission which is material, or

A statement is material when it has the "potential to alter Customs' appraisement or liability for duty." *Horizon Prods. Int'l*, 82 F. Supp. 3d at 1356 (citation omitted); *see also United States v. Menard, Inc*., 16 CIT 410, 417, 795 F. Supp. 1182, 1188 (1992) (materiality for purposes of § 1592 refers to the false statement's effect on CBP's determination of the applicable duty); 19 C.F.R. Pt. 171, App. B(B) (2013) (defining materiality for purposes of § 1592). The asserted classification of merchandise in entry paperwork "has the tendency to influence Customs' decision in assessing duties and therefore constitutes a material statement under the statute." *United States v. Optrex Am., Inc.*, 32 CIT 620, 631, 560 F. Supp. 2d 1326, 1336 (2008).

The statute does not define the term "false"; thus, it is defined according to its ordinary meaning. *United States v. Rockwell Automation Inc.*, 30 CIT 1552, 1557 462 F. Supp. 2d 1243, 1248 (2006) (citing *Perrin v. United States,* 444 U.S. 37, 42 (1979)). According to Black's Law Dictionary, a statement is "false" when it is "untrue" or "[n]ot genuine; inauthentic." *Id.* (quoting *Black's Law Dictionary* 635 (8th ed. 2004)) (citing *Koyo Seiko Co. v. United States,* 36 F.3d 1565, 1571 n. 9 (Fed. Cir. 1994) (dictionaries may supply the common meaning of a term)).

Violations of § 1592(a) may be punishable by a civil penalty depending on the degree of culpability. 19 U.S.C. § 1592(c). "Parties must meet their burdens of proof regarding [culpability] by a preponderance of the evidence. The court may determine

---

(B) may aid or abet any other person to violate
subparagraph (A).
19 U.S.C. § 1592(a)(1).

liability and assess penalties as a matter of law when the uncontroverted facts support

such a determination." *United States v. Matthews*, 31 CIT 2075, 2081 533 F. Supp. 2d

1307, 1313 (2007) (citing *United States v. New–Form Mfg. Co., Ltd*., 27 CIT 905, 918–

19, 277 F. Supp. 2d 1313 (2003)); *cf. Anderson*, 477 US at 252 (in determining whether

summary judgment should issue, "[t]he judge's inquiry . . . unavoidably asks whether

reasonable jurors could find by a preponderance of the evidence that the [party bearing

the burden of proof at trial] is entitled to a verdict").

      To establish gross negligence, Plaintiff must prove "an act or acts (of commission

or omission) [by Defendants] done with actual knowledge of or wanton disregard for the

relevant facts and with indifference to or disregard for the offender's obligations under

the statute." 19 C.F.R. Pt. 171, App. B(C)(2); *see also United States v. Ford Motor Co*.,

463 F.3d 1286, 1292 (Fed. Cir. 2006) ("An importer is guilty of gross negligence if it

behaved willfully, wantonly, or with reckless disregard in its failure to ascertain both the

relevant facts and the statutory obligation, or acted with an utter lack of care"). When a

grossly negligent § 1592(a) violation impacts the assessment of duties, the civil penalty

may not exceed "the lesser of [] the domestic value of the merchandise, or [] four times

the lawful duties, taxes, and fees of which the United States is or may be deprived." 19

U.S.C. § 1592(c)(2)(A).

      A Defendant is negligent when they "fail[] to exercise the degree of reasonable

care and competence expected from a person in the same circumstances either: (a) in

ascertaining the facts or in drawing inferences therefrom, in ascertaining the offender's

obligations under the statute; or (b) in communicating information in a manner so that it

may be understood by the recipient."  19 C.F.R. Pt. 171, App. B(C)(1).[21]  Plaintiff bears

the initial burden of proving the act or omission constituting the violation; the burden

then shifts to the alleged violator to "affirmatively demonstrate that it exercised

reasonable care under the circumstances."  *Ford Motor Co*., 463 F.3d at 1279 (Fed. Cir.

2006); 19 U.S.C. § 1592(e)(4).  When a negligent § 1592(a) violation impacts the

assessment of duties, the civil penalty may not exceed "the lesser of [] the domestic

value of the merchandise, or [] two times the lawful duties, taxes, and fees of which the

United States is or may be deprived."  19 U.S.C. § 1592(c)(3)(A).

Regardless of whether a civil penalty is assessed, when "the United States has been

deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this

section, the Customs Service shall require that such lawful duties, taxes, and fees be

restored."  *Id.* § 1592(d).

## III.   Ng's Liability

### A.  Parties' Contentions

Ng contends that he is entitled to summary judgment because he did not

personally enter or introduce the subject merchandise into the United States as

provided in the U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit") opinion

in *United States v. Trek Leather, Inc.*, 767 F.3d 1288 (Fed. Cir. 2014).  Ng's MSJ at 7-

12, 24-30; Def. Alex Ng's Reply in Supp. of Mot. to for [sic] Summ. J. ("Ng's Reply") at

---

[21] "As a general rule, a violation is negligent if it results from failure to exercise
reasonable care and competence . . . to ensure that statements made and information
provided in connection with the importation of merchandise are complete and accurate."
19 C.F.R. Pt. 171, App. B(C)(1).

2-12, ECF No. 85.[22]  Plaintiff contends that Ng is liable pursuant to *Trek Leather*

because of his "control, supervision, direct involvement in, and knowledge of and failure

to correct Sterling's erroneous importing activities."  Pl.'s XMSJ at 31-33.  In particular,

Plaintiff contends that Ng instructed Ms. Huynh to use classification forms with the

---

[22] In his motion, Ng criticizes Plaintiff's responses to interrogatories and document production and contends Plaintiff failed to properly amend or supplement its disclosures. Ng's MSJ at 18-24.  Ng contends he sent three letters to Plaintiff, which it ignored, but because of his "severely impoverished economic position," he could not afford to file a motion to compel further responses.  Ng's MSJ at 20 n.4.  Plaintiff asks the court to strike or disregard Ng's arguments.  Pl.'s XMSJ at 40-43.  Plaintiff contends that Ng violated the scheduling order by belatedly raising his discovery argument, which is predicated on the false assertion that Plaintiff ignored his letters.  Pl.'s XMSJ at 41-42 (citing Pl.'s Ex 3, ECF No. 62-8 (Plaintiff's responses to Ng's, Sterling's, and Ng Branding's discovery letters) and Pl.'s Ex. 4, ECF No. 62-9 (email from defense counsel acknowledging receipt of Plaintiff's responses to Sterling's and Ng Branding's discovery letters)).

   USCIT Rule 12(f) provides that the court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The court has broad discretion in disposing of motions to strike.  *Beker Indus. Corp. v. United States*, 7 CIT 199, 200, 585 F. Supp. 663, 665 (1984).  Nevertheless, "motions to strike are not favored by the courts and are infrequently granted."  *Jimlar Corp. v. United States*, 10 CIT 671, 673, 647 F. Supp. 932, 934 (1986) (citation omitted).

   The crux of Ng's argument appears to be Ng's belief that Plaintiff's responses failed to adduce evidence of his liability.  *See* Ng's MSJ at 18, 24.  However, Ng's characterization of Plaintiff's discovery responses is not relevant to the court's disposition of the pending summary judgment motions, which depends upon the extent to which material facts are undisputed.  *See* USCIT Rule 56(c).  To make that determination, the court reviews Parties' statements of facts and responses thereto, and relevant record documents, while taking into account Parties' respective arguments about whether the undisputed facts demonstrate that summary judgment is appropriate. *See* USCIT Rules 56, 56.3.  Accordingly, the court will disregard Ng's discovery-related arguments in its assessment of whether summary judgment should issue; however, striking those arguments is not merited.  *See Jimlar Corp.*, 10 CIT at 673, 647 F. Supp. at 934 (granting a motion to strike is an "extraordinary remedy," and should only occur when "there has been a flagrant disregard of the rules of court").  For the same reasons, Ng's discussion about the Government's motivation for suing him in his individual capacity, Ng's MSJ at 30-35, has no bearing on the propriety of summary judgment for Ng or the Government.

classification number pre-printed on the forms, and because he told his employees to

continue entering footwear under HTSUS 6402.91.40 after CBP had informed him that

was the incorrect tariff provision.  Pl.'s XMSJ at 33-35; Reply to Defs.' "Joint" Opp'n to

Pl.'s Cross-Mot. for Summ. J. Against Alex Ng and Mot. for Summ. J. Against Sterling

Footwear, Inc. and Ng Branding, LLC ("Pl.'s Reply") at 15-19, ECF No. 93.[23]  Ng

disputes the Government's factual assertions regarding his role in classification, Ng's

Reply at 6-10, and contends that, in any event, making classification decisions "does

not fulfill the requirements of *Trek* [*Leather*]," Ng's Reply at 10.  The inquiry, thus, is two-

fold.  First, the court must ascertain the scope of the term "introduce" pursuant to *Trek*

*Leather*, which is a legal question.  Second, armed with that understanding, the court

must determine whether the undisputed material facts entitle either Party to summary

judgment.

### B.  Individual Liability Pursuant to *Trek Leather*

*Trek Leather* stands for the proposition that an individual may be held liable for

violating § 1592(a)(1)(A) when that individual engages in conduct proscribed by the

statutory provision.  *Trek Leather*, 767 F.3d at 1296-97 ("person" for purposes of

§ 1592(a)(1) includes individuals and is not limited to the importer of record); *id.* at

---

[23] Ng further contends that Plaintiff cannot rely on piercing the corporate veil because it did not allege that theory of liability in the complaint.  Ng's MSJ at 35-36; Ng's Reply at 12-13 (Plaintiff's alternative theories of liability may be relevant in a subsequent action but not the instant action).  Plaintiff did not allege a veil piercing claim against Ng or facts supporting a veil piercing claim.  *See generally* Compl.  At oral argument, Plaintiff confirmed that it was not seeking to pierce the corporate veil.  Oral Arg. 1:42:18-1:42:24.  Accordingly, that aspect of Ng's motion is moot.

1297-99 (individual defendant/shareholder of importer-of-record corporation, whose

conduct came within the scope of the term "introduce" in § 1592(a)(1)(A), was jointly

liable for unpaid duties and penalties).[24]  The appellant ("Mr. Shadadpuri"), was the

president and sole shareholder of Trek Leather, Inc. ("Trek"), the importer of record.  *Id.*

at 1291.  Mr. Shadadpuri imported men's suits through several companies, including

Trek.  *Id.*  While the shipments at issue were in transit, Mr. Shadadpuri "caused the

shipments . . . to be transferred from [one of his companies] to Trek."  *Id.* at 1292

(noting that Mr. Shadadpuri directed his broker to make the transfer).  The broker

prepared and submitted the entry summaries "based on papers he received from Mr.

Shadadpuri and his aides."  *Id.* at 1293 ("When the suit manufacturer was ready to ship

completed suits, it sent Mr. Shadadpuri an invoice [], and he . . . would fax, or [his]

person who [] help[ed him] would send a fax to the broker and the broker would file the

entry.") (internal quotation marks and citation omitted).  To determine whether Mr.

Shadadpuri's conduct constituted "introducing" merchandise, the Federal Circuit looked

to the U.S. Supreme Court's decision in *Panama Hats*, which had "established the

breadth of 'introduce.'"  *Id.* at 1297-99 (citing *United States. v. 25 Packages of Panama

Hats*, 231 U.S. 358 (1913)).

---

[24] *Trek Leather* analyzed the scope of the term "introduce" pursuant to § 1592(a)(1)(A); it did not address the scope of the term "enter" or the individual defendant's level of culpability pursuant to § 1592(e).  *Trek Leather*, 767 F.3d at 1295 (defining the issues before the court); *id.*at 1297 (declining to address whether Mr. Shadapuri entered the subject merchandise).

In *Panama Hats*, foreign consignors (merchants) delivered to the U.S. consular agent, at the point of shipment, three sets of invoices that falsely and fraudulently undervalued the merchandise intended for delivery to a domestic consignee.  231 U.S. at 359.  Thereafter, the merchandise was "not technically entered at the New York customs house, but was unloaded from the ship and stored in general order."  *Id.*  The goods were forfeited on the basis of the fraudulent invoices, and the consignee asserted a claim to the merchandise on the basis that they had not been entered or introduced into U.S. commerce.  *Id.* at 359-60.  Resolving this claim required the *Panama Hats* Court to interpret the forfeiture provision of the Tariff Act of 1890, as amended in 1909. *Id.* at 359-60.

Prior to 1909, the Tariff Act of 1890 provided for the forfeiture of goods "if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice."  *Id*. at 360 (quoting Tariff Act of 1890, § 9, 26 Stat. 131, 135).  In 1909, the Tariff Act was amended to permit forfeiture "if any *consignor*, seller, owner, importer, consignee, agent, or other person or persons, shall enter *or introduce*, or attempt to enter *or introduce*, into the commerce of the United States, any imported merchandise by means of any fraudulent or false invoice."  *Id*. at 359–60) (quoting Tariff Act of 1909, § 28, 36 Stat. 11, 97) (emphasis added).

According to the Supreme Court, the amendment's purpose was to "enlarge[ ] the scope of conduct for which the goods should be forfeited" beyond that which constituted the entry of merchandise.  *Id*. at 361.  Only then could the statute reach the

consignor of the goods who did not "make the declaration, sign the documents, or take

any steps in entering or attempting to enter the goods," but who had prepared the false

and fraudulent invoice in the exporting country.  *Id*. at 361 ("Under the [prior] statute, . . .

there was no penalty for the grossest fraud on the part of the consignor, notwithstanding

the fact that his invoice valuation was of great importance in determining true value, as

a basis for collecting the duty.").  The Court explained that, "when the goods,

fraudulently undervalued and consigned to a person in New York, arrived at the port of

entry, there was an attempt to introduce them into the commerce of the United States.

When they were unloaded and placed in general order, they were actually introduced

into that commerce within the meaning of the statute intended to prevent frauds on the

customs."  *Id*. at 362.

Pursuant to *Panama Hats*, the term "introduce" in § 1592(a)(1)(A) "is a flexible

and broad term that  . . . cover[s], among other things, actions completed before any

formal entry filings made to effectuate release of imported goods."  *Trek Leather*, 767

F.3d at 1298.  The Federal Circuit did not define the full reach of the term "introduce,"

but concluded that it covered "actions that bring goods to the threshold of the process of

entry by moving goods into CBP custody in the United States and providing critical

documents (such as invoices indicating value) for use in the filing of papers for a

contemplated release into United States commerce even if no release ever occurs."  *Id.*

at 1299.  Mr. Shadadpuri's conduct came within that understanding of the term

"introduce."  *Id.* at 1299 ("[Mr. Shadadpuri] did everything short of the final step of

preparing the [entry forms] and submitting them and other required papers to make formal entry.").

Ng interprets *Trek Leather* as *requiring* an act "at the threshold of entry," or, in other words, an act "intended to immediately enter the goods."  Ng's MSJ at 26 (arguing the *Trek Leather* court "restricted its holding . . . to instances where the personal acts 'bring goods to the threshold of the process of entry . . . .'") (quoting *Trek Leather*, 767 F.3d at 1299).  According to Ng, "[a]nything less" than doing "everything short of the final step" in entering goods does not come within the term "introduce" for purposes of § 1592(a)(1)(A).  *Id.* at 26-27; *see also id.* at 27 (the *Trek Leather* court "obviously wanted to limit the [Government's] reach under [§]1592(a)(1)(A) to exclude outlying, non-critical acts").  Plaintiff contends Ng has misunderstood *Trek Leather*, wherein the court simply "discussed what the term 'introduce' covered in connection with Mr. Shadadpuri's actions."  Pl.'s XMSJ at 25, 29.

Contrary to Ng's assertion, *Trek Leather* did not set the outer bounds of what constitutes the introduction of merchandise for the purpose of § 1592(a)(1)(A).  *Trek Leather*, 767 F.3d at 1298 (expressly declining to "define the reach of the term [introduce]").  Instead, *Trek Leather* looked to *Panama Hats* for guidance as to whether Mr. Shadadpuri's conduct was covered by the term.  *Trek Leather*, 767 F.3d at 1299.  Ng's narrow reading of *Trek Leather* is inconsistent with *Panama Hats*' broad interpretation of the term "introduce" as covering the foreign consignor that made a false and fraudulent statement on invoices prepared in connection with goods the consignor shipped to a U.S. port.  *Panama Hats*, 231 U.S. at 361.  Moreover, the Federal Circuit's

reference to "actions that bring goods to the threshold of the process of entry by moving goods into CBP custody," *Trek Leather*, 767 F.3d at 1299, includes such actions as ordering goods to be shipped to a U.S. port for the purpose of entering those goods into U.S. commerce, because by so doing, the goods are ultimately moved into CBP's custody, *cf. Panama Hats*, 231 U.S. at 361 ("But when the consignor made the fraudulent undervaluation in the foreign country, *and on such false invoice the goods were shipped, and arrived consigned to a merchant in New York*, the merchandise was within the protection and subject to the penalties of the commercial regulations of this country . . . .") (emphasis added).  The tariff classification stated in an entry document is no less material to CBP's assessment of duties than is the stated value of the merchandise.  *Cf. Panama Hats*, 231 U.S. at 361.  Read together, *Panama Hats* and *Trek Leather* demonstrate that one who misclassifies merchandise (or causes merchandise to be misclassified) in a document prepared for the purpose of entering goods which that person causes to be shipped to, and unloaded at, a U.S. port, falls within the ambit of the term "introduce."

### C.  The Presence of Disputed Facts Precludes Summary Judgment

There is undisputed evidence that Ng played a role in causing Sterling's footwear to be shipped to the United States.  See PSOF ¶ 21(2),(4),(6); Defs.' Resp. to PSOF ¶¶ 21(2),(4),(6) (Ng handled the design, development, and manufacture of Sterling's imported footwear); Ng Decl. ¶ 7 (Ng's "primary responsibilit[ies]" consisted of footwear design, "marketing, *sales* and establishing relationships with Chinese manufactur[ers]") (emphasis added).  Summary judgment is inappropriate, however, because there is

conflicting evidence regarding Ng's role in determining the tariff provision pursuant to

which Sterling's footwear would be entered.

Ng testified in his deposition and averred in his declaration that he played no role

in determining Sterling's footwear classification, and never instructed Ms. Huynh on

preparing paperwork for Sterling's customs brokers.  Ng's Ex. E (Deposition of Alex

Ng)) ("Ng Dep.") at 147:3-11, 203:8-206:19, ECF No. 53-4; Ng Decl. ¶¶ 4-5.  Ng further

testified that he told his employees to work with the customs brokers to determine the

correct classification.  Ng. Dep. at 118:19-119:4; Ng Decl. ¶ 4.  Ng also asserts that Ms.

Huynh testified that Ng "never spoke to her about customs classifications [and] never

instructed her to use any classification [number] . . . ."  Ng's Reply at 7 (citing Huynh

Dep. generally); *see also* Ng's MSJ at 14 (asserting that "Ms. Huynh did not testify that

she ever spoke to Mr. Ng about Sterling['s] . . . HTS classification determinations [or]

that Mr. Ng ever instructed her to use any HTS classification . . . ." (citing same).

In fact, as Plaintiff points out, Ms. Huynh testified that Ng showed her how to

submit entry documentation to Sterling's customs brokers, that the documents had tariff

provisions preprinted on them, that Ng said to use those tariff provisions, which most

entries did, and when she hired Ms. Ng, Ms. Huynh showed her how to prepare the

entry documents and instructed her to use the same tariff provisions Ng had told Ms.

Huynh to use.  Huynh Dep. at 36:8-40:9; *see also* Pl.'s XMSJ at 33-35.  Ms. Ng testified

that Ng and Ms. Huynh had made decisions on classifying footwear.  Nancy Ng Dep. at

47:8-14.  Further, after meeting with CBP in July 2009, Ms. Huynh told Ms. Ng that Ng

wanted to continue entering the footwear under HTSUS 6402.91.40.  Nancy Ng Dep. at

51:4-54:2, 56:9-57:4; 63:13-65:4.

According to Ng, "the evidence produced by the Government only establishes

that Ms. Ng relied on the [] customs broker to make classification decisions."  Ng's

Reply at 7 (citing Ng's Ex. N); *see also* Ng's MSJ at 22-23.  Ng further contends that

"Ms. Ng and Ms. Huynh confirmed in a 2009 interview with Customs that they were

instructed by Mr. Ng to work with the customs brokers to determine the correct

classification number."  Ng's Reply at 10 (citing Proposed Penalty Letter at 8).  Ng's

argument, and reliance on the cited documents, is unavailing.

Defendants' Exhibit N consists of an email from Ms. Ng to Mr. Kauffman,

Sterling's customs broker.  Ng's characterization of the exhibit neglects to mention that,

in the email, Ms. Ng *provided* Mr. Kauffman with tariff provisions for 10 styles, and

asked for assistance classifying just one style.  *See* Ng's Ex. N.  Additionally, the email

is dated July 27, 2009, *see id.*, more than two years after Sterling began entering

footwear, and thus is unsupportive of Sterling's general practice, *see* Defs.' Resp. to

PSOF ¶ 89 (averring that "Sterling always worked with the customs brokers to make

classification determinations") (citing, *inter alia*, Ng's Ex. N); *supra* note 18.  There is

also nothing in Ng's Exhibit N to suggest, as Ng contends, that "Sterling . . . only

provided [] classification numbers to customs brokers for entry after it had been prior

determined correct [sic] by a licensed customs broker."  Ng's MSJ at 23 (citing Ng's Ex.

N).

Page 8 of the Proposed Penalty Letter describes an October 2009 meeting between Ms. Huynh, Ms. Ng, and customs officials.  Proposed Penalty Letter at 8.  The meeting was held to discuss the establishment of an Account Management Program for *Ng Branding* as a result of "misclassification and value issues discovered" by CBP.  *Id.*  During the meeting, Ms. Huynh and Ms. Ng stated that they relied on customs brokers to classify *Ng Branding's* footwear.  *Id.*  Ms. Ng and Ms. Huynh did not "confirm[]" anything in regards to *Sterling's* entries.  *See id.*; Ng's Reply at 10.

In sum, Ng's testimony concerning his role in Sterling's entries conflicts with Ms. Huynh's and Ms. Ng's testimony, and other record evidence.  The conflicting testimony precludes the entry of summary judgment for either Party.  *See Anderson*, 477 U.S. at 249, 255 (credibility determinations are for the fact-finder).  For that reason, Ng's motion for summary judgment, and the Government's cross-motion for summary judgment as to Ng, will be denied.[25]

## IV.   Sterling's Liability

### A.  Entry of Merchandise

Parties do not dispute that Sterling, as the importer of record, made the subject entries.  *See* PSOF ¶ 51; Defs.' Resp. to PSOF ¶ 51 (Sterling made 363 entries from July 2007 to October 2009, inclusive of the subject entries); *see also* Proposed Penalty Letter at 2 (stating Sterling's importer identification number).  Accordingly, there is no

---

[25] Because Ng's role in introducing the subject merchandise is disputed, the court does not reach Parties' arguments regarding his culpability, or lack thereof.

dispute that Sterling "enter[ed]" merchandise for purposes of § 1592(a).  *See* 19 U.S.C.

§§ 1484, 1485.

### B. Material False Statement

#### 1. Parties' Contentions

Plaintiff contends Sterling's entry documents falsely identified the subject

merchandise as "rubber tennis shoes," and falsely classified the subject merchandise

under the corresponding tariff provision for rubber tennis shoes, HTSUS 6402.91.40.

Pl.'s XMSJ at 18-19.  Plaintiff asserts that "[s]amples, photographs, and descriptions of

the footwear conclusively demonstrate that the footwear [is] not 'rubber tennis shoes.'"

Pl.'s XMSJ at 18 (citations omitted).  Plaintiff contends the false statements were

material because they caused CBP to assess duties at six percent *ad valorem*, which is

less than the applicable rates had the footwear been correctly classified.  Pl.'s XMSJ at

19.

Defendants contend that Plaintiff has failed to carry its burden of proving that the

subject merchandise was misclassified.  Defs.' Alex Ng, Sterling Footwear, Inc. and Ng

Branding, LLC's Joint Mem. of Law & P. [&] A. in Opp'n to Pl.'s Mot. for Summ. J.

Against Alex Ng, Sterling Footwear, Inc. and Ng Branding, LLC ("Defs.' Resp.") at 6,

ECF No. 84.[26]  Defendants assert that testing of sample footwear involved in this

---

[26] Defendants further assert that "the issue of whether the subject merchandise was
properly classified should be argued by the Parties' respective experts and resolved at
trial."  Defs.' Resp. at 6.  Defendants did not, however, file an affidavit or declaration
pursuant to USCIT Rule 56(d) urging the court to defer ruling on the pending motions
because they are currently unable to "present facts essential to justify [their] opposition."
Accordingly, the court must determine whether, on the current record, there is any

lawsuit by HTS "indicated that the subject footwear was in fact 'rubber tennis shoes' or 'rubber shoes' and that all the entries were in fact properly classified." Defs.' Resp. at 7. Defendants further assert that they "have always denied" any misclassification, and the quality of certain photographs relied upon by the Government was too poor to establish misclassification. Defs.' Resp. at 7-8.

### 2. Plaintiff has Demonstrated that Sterling Misclassified its Footwear

There is no genuine dispute that the classification asserted by Sterling for the subject entries is HTSUS 6402.91.40. *See supra* Background Section I.B; Defs.' Resp. at 6-8 (challenging the *falsity* of the statements, not whether they were made). Accordingly, the court must determine whether the undisputed facts demonstrate the falsity of the asserted classification pursuant to HTSUS 6402.91.40.

Plaintiff proffers several pieces of evidence demonstrating that Sterling's footwear was misclassified. This evidence includes a declaration by the customs official responsible for examining Sterling's entries, associated notices of action, and a declaration by Sterling's primary customs broker. *See* Whitney Decl. ¶¶ 24-26, 33-71,

---

genuine factual dispute regarding whether Sterling misclassified its footwear. *See* USCIT Rule 56(a); *Celotex Corp.*, 477 U.S. at 322-23. As discussed *infra*, Defendants have failed to establish that there is a genuine dispute about the material characteristics of the subject merchandise or the classification provision asserted in the entry documents. In the absence of any genuine dispute as to the factual issue of what the merchandise is, the proper classification of the merchandise is a legal issue. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (whether merchandise is "properly classified under one or another classification heading . . . [is] a question of law[] . . . because what is at issue is the meaning of the terms set out in the statute") (citations omitted). Defendant's assertion is, therefore, unavailing.

90-91, 94, 112 (describing the official's review of Sterling's entries and footwear based on entered samples and online research about specific style numbers); Proposed Penalty Letter, Exs. D, E, M (notices of action detailing rate-advances for 191 entries); Kauffman Decl. ¶¶ 5, 9, 24, 25 (averring that from 2008 to 2009 the broker made "hundreds of entries" under HTSUS 6402.91.40 for Sterling, and, upon seeing samples of Sterling's footwear at the July 29, 2009 meeting with CBP, determined that Sterling's footwear had been misclassified).[27]

Plaintiff also proffers physical samples of several of Sterling's styles and photographs thereof.  *See* Pl.'s Physical Ex. 1; Pl.'s Ex. 9.   As discussed above, HTSUS 6402.91.40 covers, in pertinent part, footwear with 90% rubber or plastic uppers and *excludes* footwear with "a foxing or a foxing-like band applied or molded at the sole and overlapping the upper."  *In camera* inspection[28] of the submitted samples demonstrates that *none* of the styles are proper candidates for classification under HTSUS 6402.91.40 because they either lack the requisite plastic or rubber upper, have a foxing or foxing-like band, or both.  *See* Pl.'s Physical Ex. 1; Pl.'s Ex. 9.[29]

---

[27] Plaintiff has also submitted evidence that Sterling protested the *timeliness* of Customs' reliquidation of certain entries, but not the substance thereof.  *See* PSOF ¶¶ 105-06; Defs.' Resp. to PSOF ¶¶ 105-06; Proposed Penalty Letter at 9; Pl.'s Ex. 7; Pl.'s Ex. 8.

[28] It is well-settled that "the merchandise itself is often a potent witness" in the determination of the correct classification.  *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989) (citation omitted); *see also, e.g.*, *Streetsurfing LLC v. United States*, 38 CIT ___, ___,11 F. Supp. 3d 1287, 1302 (2014); *Latitudes Int'l Fragrance, Inc. v. United States*, 37 CIT ___, ___, 931 F. Supp. 2d 1247, 1257 (2013).

[29] The following list summarizes the relevant characteristics of the samples of Sterling's footwear the Government has provided:

Style No. 19FLR121W. Upper: canvas. Foxing or foxing-like band: present.

The sole evidence Defendants proffer to support their contention that no entries were misclassified is the HTS Lab Report.  *See, e.g.*, Defs.'s Resp. at 7; Defs.' Resp. to PSOF ¶ 52.  Defendants assert that they "ordered professional laboratory tests from Harmonized Tariff Services, LLC for the sample footwear, *which formed the basis of this lawsuit* and was alleged to be misclassified by Customs."  Defs.' Resp. at 7 (emphasis added); *id.* at 10 ("Defendants hired [HTS] to evaluate whether such entries were in fact misclassified. . . .The professional tests determined that they were properly classified.") (citations omitted).

There are two problems with Defendants' contention.  First, the HTS Lab Report was obtained in connection with CBP's classification of entries by Ng Branding, *not* by Sterling.[30]  *See* Pl.'s Reply, Ex. 6, ECF No. 93-2 (Ng Branding's protest and application for further review, in which counsel discusses Ng Branding's solicitation of laboratory

---

Style No. 19FLR803M. Upper: canvas. Foxing or foxing-like band: present.
Style No. 19FLR201W. Upper: plastic and canvas. Foxing or foxing-like band: present.
Style No. 19FHR201M. Upper: plastic. Foxing or foxing-like band: present.
Style No. 19FTB101W. Upper: jersey textile. Foxing or foxing-like band: present.
Style No. 19FSL101W. Upper: satin/suede/plastic. Foxing or foxing-like band: present.
Style No. 19FBR101K. Upper: canvas/plastic. Foxing or foxing-like band: present.
Style No. 19FRL101W. Upper: canvas. Foxing or foxing-like band: present.
Style No. 19SLR601M. Upper: canvas. Foxing or foxing-like band: present.
Style No. 19FSZ401W. Upper: leather. Foxing or foxing-like band: absent.
Style No. 19FDN102W. Upper: leather. Foxing or foxing-like band: absent.
Style No. 19FAP102W. Upper: plastic. Foxing or foxing-like band: present.
Style No. 19FSE101W. Upper: rubber. Foxing or foxing-like band: present.
Style No. 19FHR301W. Upper: canvas. Foxing or foxing-like band: present.
Style No. 19FLR129W. Upper: canvas. Foxing or foxing-like band: present.
*See* Pl.'s Physical Ex. 1.
[30] Although Ng Branding is named in the complaint as Sterling's successor, its entries are not at issue.  *See* Compl. ¶ 43.

testing by HTS to determine the components of the tested footwear's outsoles, and to

which the HTS Lab Report was appended).  Second, the HTS Lab Report describes the

tested samples as having textile uppers *and* a foxing.  *See* HTS Lab Report at

DEF00169, DEF00171.  The HTS Lab Report, therefore, is irrelevant to the instant

case; and to the extent that it is relevant, it damages, rather than supports, Defendants'

position that Sterling's entries were correctly classified.[31]  Although the court must credit

the nonmovant's evidence, *Netscape Comm.'s Corp.*, 295 F.3d at 1319, it is not

required to credit that party's blatant mischaracterization of the evidence, *see Scott v.*

*Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one

of which is blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts" when ruling on the motion).[32]

---

[31] At oral argument on the summary judgment motions, defense counsel was afforded
the opportunity to explain his characterization of, and reliance on, the HTS Lab Report;
he failed to do so.  Oral Arg. 38:03-38:14, 38:50-43:45, 44:44-46:03.  Defense counsel's
characterization of the HTS Lab Report was the subject of a show cause hearing
pursuant to USCIT Rule 11.  *See* Order (July 18, 2017), ECF No. 101; Mem. and Order
(Sept. 15, 2017), ECF No. 110.

[32] Although not necessary to resolve this case, and not directly raised by Plaintiff in its
moving brief, there is an additional problem with Defendants' argument.  The argument
essentially challenges the correctness of CBP's classification decisions with respect to
its liquidations and reliquidations of certain of the subject entries.  It is well settled that
Customs' findings related to a particular liquidation "merge with the liquidation" and are
final and conclusive unless challenged in accordance with 19 U.S.C. § 1514.
*Volkswagen of Am., Inc. v. United States*, 532 F.3d 1365, 1370 (Fed. Cir. 2008); *see*
*also United States. v. Am. Home Assur. Co*., 39 CIT ___, ___, 100 F. Supp. 3d 1364,
1369 (2015); 19 U.S.C. § 1514 (providing, *inter alia*, that "decisions of the Customs
Service . . . as to . . . the classification and rate and amount of duties chargeable . . . [or]
the liquidation or reliquidation of an entry . . . shall be final and conclusive upon all
persons . . . unless a protest is filed in accordance with this section, or unless a civil
action contesting the denial of a protest, in whole or in part, is commenced in the
[USCIT]").  Unprotested issues related to the liquidation of the subject entries may not

Defendants also assert, without explanation, that the "terrible" photographs of Sterling's footwear appended to the Proposed Penalty Letter "establish that the subject footwear was 'Rubber Tennis Shoes' or 'Tennis Shoes' pursuant to the HTS and properly classified," and thereby create a genuine issue of material fact as to whether Sterling misclassified its footwear. Defs.' Resp. at 8. Plaintiff concedes that the quality of the photographs appended to the Proposed Penalty Letter is "less than ideal," and instead relies on the actual samples and more recent photographs of the samples. Pl.'s Reply at 8-9; Pl.'s Physical Ex. 1; Pl.'s Ex. 9. Even accounting for the quality of the photographs, however, Defendants' conclusory assertion is difficult to fathom and impossible to credit. Several of the photographs depict boots, one with tassels, that clearly are not tennis shoes, rubber or otherwise. *See* Proposed Penalty Letter, Ex. I, ECF No. 62-4. And although the composition of the upper of each shoe is not

---

be "raised in any context," *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1557 (Fed. Cir.1997); that is, the rule of finality "applies to both importer duty recovery suits and to [g]overnment enforcement actions," *Am. Home Assur. Co.*, 100 F. Supp. 3d at 1369; *see also Cherry Hill*, 112 F.3d at 1557 (§ 1514's "'final and conclusive clause' . . . is sufficiently broad that it indicates that Congress meant to foreclose unprotested issues from being raised in any context, not simply to impose a prerequisite to bringing suit"). As Plaintiff notes, Sterling elected not to protest Customs' classification of any of its footwear subject to the rate-advances, and only challenged the timeliness of some of the reliquidations. *See* Pl.'s Reply at 7-8; Pl.'s Ex. 7; Pl.'s Ex. 8. Customs' decisions regarding the classification of Sterling's entries thus became "final and conclusive." *See* 19 U.S.C. § 1514(a). Defendants cannot "bypass the protest mechanism" and now "collaterally challenge the liquidation in the ensuing enforcement action." *See Cherry Hill*, 112 F.3d at 1557 ("To give importers . . . that option would create a gaping hole in the administrative exhaustion requirement of section 1514 and would be inconsistent with the underlying policy of section 1514, which is to channel challenges to liquidations through the protest mechanism in the first instance.").

ascertainable from the photographs, the presence of a foxing, or foxing-like band, is.

*See* Proposed Penalty Letter, Exs. G-H, ECF No. 62-4.

Accordingly, the unrebutted evidence demonstrates the existence of a false

statement; i.e., that the subject entries were misclassified.  The false statement was

material because it had the "potential to alter Customs' appraisement or liability for

duty."  *Horizon Prods. Int'l*, 82 F. Supp. 3d at 1356 (citation omitted).

### C.  Culpability

#### 1.  Parties' Contentions

Plaintiff contends that Sterling knew the nature of the footwear it imported and

could have correctly described the footwear on its entry papers.  Pl.'s XMSJ at 21-22.

Plaintiff further contends that Sterling "instructed," rather than "consult[ed]," its customs

brokers regarding the classification of its footwear entries."  Pl.'s XMSJ at 21.  And

although, according to Plaintiff, Sterling is "presumed to [have] had knowledge of

information published by CBP . . . to assist the trade with compliance obligations," it

failed to "consult the HTSUS, customs regulations, or CBP's informed compliance

publications to assist in describing its merchandise."  Pl.'s XMSJ at 21.  Plaintiff finally

contends that the notices of action issued to Sterling provided it with notice of the

correct classification of its footwear, as did Customs officials when they met with

Sterling in July 2009, to explain the misclassifications, yet "Sterling blatantly disregarded

its obligation to correct its erroneous classifications of entries and continued

misclassifying its entries."  Pl.'s XMSJ at 22.  Plaintiff likens Sterling's conduct to that of

the defendant in *New-Form Mfg. Co.*, 27 CIT 905, 277 F. Supp. 2d 1313,[33] and *United States v. Ford Motor Co.*, 29 CIT 793, 387 F. Supp. 2d 1305 (2005), *aff'd in part, rev'd in part on other grounds*,[34] 463 F.3d 1286 (Fed. Cir. 2006).

Defendants contend that (1) at "all times" they relied on Mr. Pollack's legal opinion "that the entries were properly classified," (2) they relied on Ms. Huynh to hire "experienced employees," including Ms. Ng, and "competent customs brokers" to determine classifications, (3) Ng "always instructed his employees . . . to work with the customs brokers to determine the proper classification," (4) Ng created the production department to determine correct classifications, and (5) they hired HTS to determine whether entries had been misclassified.  Defs.' Resp. at 9.[35]

### 2.  Sterling Acted with Gross Negligence

As discussed above, establishing gross negligence requires Plaintiff to prove that Sterling acted "with actual knowledge of or wanton disregard for the relevant facts and

---

[33] In *New-Form Manufacturing Co.*, the court determined that the defendant acted with gross negligence because it "knew that its merchandise was jack parts to be used for jacks[,] . . . knew that jack parts were subject to antidumping duties[,] . . . knew that its broker was not paying those duties[,] . . . identified its merchandise using [tariff provisions] that did not apply to jack parts, [] failed to accurately describe the merchandise[, and] . . . denied to its broker that it was exporting jack parts."  27 CIT at 919, 277 F. Supp. 2d at 1327.

[34] In *Ford Motor Co.*, the defendant "repeated[ly] fail[ed]" to "notify Customs promptly of the value of the engineering purchase orders," which bore on the dutiable value of the imports.  29 CIT at 810, 387 F. Supp. 2d at 1321.

[35] Defendants filed a joint response rebutting their culpability generally; they did not always delineate the individual defendants' conduct for examination.  *See* Defs.' Resp. at 8-10.

with indifference to or disregard for the offender's obligations under the statute." 19

C.F.R. Pt. 171, App. B(C)(2).

The undisputed facts demonstrate that Sterling knew the style and composition

of its footwear. Sterling imported several types of flip flops, sandals, heels, boots, and

sneakers made from a variety of materials that included textiles, leather, and rubber.

PSOF ¶ 35; Defs.' Resp. to PSOF ¶ 35. The purchaser of Sterling's imported footwear,

Philip Simon, ordered specific styles corresponding to specific designs, colors, and

materials. PSOF ¶¶ 37, 38; Defs.' Resp. to PSOF ¶¶ 37, 38. Sterling designed that

footwear and set manufacturing specifications, which were confirmed by samples

Sterling had produced before it satisfied any purchase orders. PSOF ¶¶ 36, 39; Defs.'

Resp. to PSOF ¶¶ 36, 39. In short, Sterling knew the characteristics of the footwear it

imported.

The undisputed facts also establish Sterling's indifference to or disregard for its

statutory obligations. Sterling knew that it was responsible for correctly classifying its

entries and complying with customs laws regarding its footwear entries. PSOF ¶ 34;

Defs.' Resp. to PSOF ¶ 34. Yet, Sterling consistently instructed its brokers to enter

footwear pursuant to HTSUS 6402.91.40, without regard to the styles of footwear being

imported and, thus, without regard for whether that was the correct tariff provision. *See*

Whitney Decl. ¶¶ 102-110; Proposed Penalty Letter, Ex. P. Even after Customs issued

two notices of action to Sterling on June 4, 2009 and July 9, 2009, on July 27, 2009,

Sterling instructed its broker to enter the same style pursuant to HTSUS 6402.91.40.[36]

*See* Ng's Ex. N (instructing Seattle Logistics to enter 19FLR103M/104M/108M/111M

under HTSUS 6402.91.40); Proposed Penalty Letter, Ex. D (issuing a rate-advance on

Entry No. CEB 00042295 for incorrect classification under HTSUS 6402.91.40);

Whitney Decl. ¶ 24 (explaining that Entry No. CEB 00042295 consisted of 1900 cartons

of Style No. 19FLR121W).[37]   Additionally, following the July 29, 2009, meeting with

customs officials, Sterling failed to submit any post-entry amendments despite its

agreement to provide them.   PSOF ¶¶ 78-79; Defs.' Resp. to PSOF ¶¶ 78-79; Whitney

Decl. ¶¶ 77-78, 90; Kauffman Decl. ¶¶ 26-28; *see also* Proposed Penalty Letter, Ex. J at

2.

          Defendants' contrary contentions are unavailing.   First, Defendants could not

have relied on Mr. Pollack's opinion "at all times" because Sterling did not hire Mr.

Pollack until *after* it learned that CBP had determined that its footwear was being

---

[36] The court does not, however, consider that Sterling was any less grossly negligent before Customs issued the notices of action.   This is not a situation in which reasonable minds might disagree on whether Sterling's styles meet the requirements of HTSUS 6402.91.40.   The composition of the upper is printed inside the footwear and the foxing or foxing-like band is clearly visible on the exterior.   *See* Pl.'s Physical Ex. 1.   A cursory review of the plain language of HTSUS 6402.91.40 by Sterling would have demonstrated the inapplicability of that provision to the footwear in question.

[37] Sterling used the following method to generate style numbers: the first digit of a style number indicates brand; the second digit indicates the year; the next three letters indicate the style; the final three digits indicate the color or tattoo design; the final letter indicates whether the shoe is for women (W), men (M), or children (K).   Whitney Decl. ¶ 96.   Accordingly, Style No. 19FLR121W is the same as Style Nos.19FLR103M/104M/108M/111M, except for different color or tattoo designs and sizing for women instead of men.

misclassified.  *See* Ng. Decl. ¶ 9.[38]  At oral argument, counsel even conceded that

Sterling could not have relied on Mr. Pollack's opinion to classify its entries.  Oral Arg.

53:44-54:09.  Second, Defendants' purported reliance on Ms. Huynh to hire competent

employees and brokers, or Sterling's establishment of a "production department," does

not negate Sterling's responsibility to correctly classify its footwear and, in any event,

the overwhelming evidence demonstrates that Sterling did not rely on its brokers for

classification advice, but rather provided classification information to them.  Proposed

Penalty Letter, Ex. P.  *Cf. Optrex Am., Inc*., 32 CIT at 635, 560 F. Supp. 2d at 1339

(2008) (rejecting the defendant's "attempt to shift responsibility for classification to its

customs broker, as it is well settled that the *importer* bears responsibility for

classification of its merchandise") (citing 19 U.S.C. § 1484(a)).  *See supra* note 18

(discussing Defendants' evidence cited in support of its argument that Sterling relied on

its customs brokers for classification advice).  Moreover, even when CBP alerted

Sterling to the misclassification, Defendants failed to correct their errors and, in fact,

compounded those errors by continuing to misclassify their entries of the same goods.

Finally, for reasons already amply stated, Defendants' attempt to rely on the HTS Lab

Report lacks merit.  *See supra* Discussion Section IV.B.2; *supra* note 31.

---

[38] Further, Plaintiff's unrebutted evidence demonstrates that Mr. Pollack protested the
timeliness of Customs' reliquidations of Sterling's entries, not its classification
determination.  Pl.'s Ex. 7.  As Plaintiff points out, it would be "incongruous" for Mr.
Pollack to "have advised [Sterling] that [its] entry classifications had been correct while
simultaneously not protesting CBP's classification."  Pl.'s Reply at 8.  In contrast, Mr.
Pollack filed a protest challenging Customs' classification of *Ng Branding*'s entries.  *See*
Pl.'s Ex. 6.

In sum, Sterling had knowledge of the footwear it imported, because it had designed it.  It knew that it was responsible for correctly classifying its footwear.  Yet, Sterling repeatedly described the footwear as "rubber tennis shoes" and instructed its brokers to enter the footwear pursuant to the corresponding--incorrect--tariff provision. Sterling failed to correct its errors when pointed out by CBP and, instead, continued to make entries using the incorrect classification.  Plaintiff has demonstrated Sterling's gross negligence by a preponderance of the evidence.  *See Matthews*, 31 CIT at 2081, 533 F. Supp. 2d at 1313; *cf. New-Form Mfg. Co.*, 27 CIT at 919, 277 F. Supp. 2d at 1327, 27 C.I.T. 905, 919.  Accordingly, Plaintiff is entitled to summary judgment as to Sterling's liability for gross negligence pursuant to 19 U.S.C. § 1592(a).

## V.   Ng Branding's Liability

### A.  Parties' Contentions

Plaintiff contends that Ng Branding may be held liable because it "was a 'mere continuation' of Sterling."  Pl.'s XMSJ at 24-25.  In particular, Plaintiff contends that Ng Branding "had the same corporate officer(s), location, employees, scope of business, and telephone numbers, . . ., and it imported and sold the same footwear that is the subject of this civil action."  Pl.'s XMSJ at 25.  Plaintiff further contends that Ng Branding should be held liable "because it is, for all practical purposes and intents, Sterling"; in other words, "Sterling and Ng Branding . . . essentially constitute a single enterprise."

Pl.'s XMSJ at 24.  Defendants' filings did not respond to Plaintiff's assertion of Ng

Branding's successor liability or single enterprise theory of liability.[39]

### B. Legal Framework and Choice of Law

#### 1. Successor Liability

A successor entity is generally not liable for its predecessor's debts.  *See Bud*

*Antle, Inc. v. Eastern Foods, Inc*., 758 F.2d 1451, 1456 (11th Cir. 1985) ("As a general

rule, a corporation that purchases or otherwise acquires the assets of a second

corporation does not assume the debts and liabilities of the second corporation.").  This

court has, however, determined that successor corporations may be held liable for a

predecessor's violations of 19 U.S.C. § 1592.  *United States v. CTS Holding, LLC*, Slip

Op. 15-70, 2015 WL 3960890, at *9 (Ct. Intl. Trade June 30, 2015) ("[T]the word

'person' in § 1592 properly includes corporations and their successors and assigns.");

*see also United States v. Adaptive Microsys., LLC*, 37 CIT ___, ___, 914 F. Supp. 2d

1331, 1338–42 (2013); *United States v. Ataka Am., Inc*., 17 CIT 598, 600, 826 F. Supp.

495, 498 (1993).  The court has, in varying cases, applied both state law and federal

common law when determining whether a successor corporation is liable for the actions

of its predecessor pursuant to § 1592.  *Compare Adaptive Microsys*., LLC, 914 F. Supp.

2d at 1338 (applying Wisconsin law in penalty and recovery actions), *with Ataka Am.,*

*Inc*., 17 CIT at 600, 826 F. Supp. at 498 (applying federal common law in recovery

---

[39] At oral argument, Defendants asserted that Plaintiff did not plead successor liability in the complaint, Sterling was not dissolved, and there was no transfer of assets.  Oral Arg. at 1:54:03-1:54:30.  Plaintiff alleged that Ng Branding was Sterling's successor and several supporting facts in its complaint.  *See* Compl. ¶ 43.

action). The court need not address the choice of law issue at this time, however, because California law and federal common law on successor liability are similar and appear to lead to the same outcome in this case.[40]

Federal common law and California law provide that a successor entity may be responsible for its predecessor's debts when "(1) there is an express or implied agreement to assume past debts, (2) the change in corporate form constitutes a de facto merger, (3) the successor is a mere continuation of its predecessor, or (4) the change in corporate form was motivated by the intent to defraud creditors." *Ataka Am.*, 17 CIT at 600, 826 F. Supp. at 498 (federal common law) (citing *Bud Antle*, 758 F.2d at 1456 (citing the law of several federal district and circuit courts)); *see also Cleveland v. Johnson*, 147 Cal. Rptr. 3d 772 (Cal. Ct. App. 2012) (California law).[41]  Successor liability is usually contingent upon the transfer of assets from the predecessor to the successor entity.  *See Bud Antle*, 758 F.2d at 1457 ("All four of [the exceptions to the general rule of nonliability] require a transfer of assets in order to hold the acquiring corporation liable."); *Cleveland*, 147 Cal. Rptr. 3d at 781 ("[L]egal discussion begins with 'the rule ordinarily applied to the determination of whether a corporation *purchasing* the

---

[40] At oral argument, Plaintiff asserted that California law and federal common law is the same on this issue.  Defendants asserted that federal law would likely apply.  Oral Arg. at 1:47:11-1:48:45.

[41] Like federal common law, California law provides for successor liability when:
> (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

*Cleveland*, 147 Cal. Rptr. 3d at 781 (citation omitted).

principal assets of another corporation assumes the other's liabilities.'") (quoting *Ray v. Alad Corp*. 560 P.2d 3 (Cal. 1977)) (emphasis added).

Relevant here, the "mere continuation" exception may apply when "a new corporation, which purchases all the assets of the old, proceeds exactly as if it were the old corporation." *Ataka Am*., 17 CIT at 602, 826 F. Supp. at 499 (continuity of officers, directors, and stockholders "in the selling and purchasing corporations" are "key element[s]" suggesting continuation) (citing *Bud Antle*, 758 F.2d at 1458–59); *see also Mozingo v. Correct Mfg. Corp*., 752 F.2d 168, 174 (5th Cir. 1985) ("The traditional rule with regard to the continuation exception . . . is that a corporation is not to be considered a continuation of a predecessor unless, after the transfer of assets, only one corporation remains, and there is an identity of stock, stockholders, and directors between the two corporations."). Likewise, as construed pursuant to California law, when "a corporation organizes another corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old." *Cleveland*, 147 Cal. Rptr. 3d at 784 (internal quotation marks and citation omitted).

### 2. Single Enterprise Theory

Plaintiff's brief did not offer legal support for its assertion of a "single enterprise" theory of liability. *See* Pl.'s XMSJ at 24. At oral argument, Plaintiff was offered the chance to provide one, and did not. Letter to Counsel (July 5, 2017) at 5, ECF No. 99 (legal and factual questions issued to Parties in advance of oral argument, in which the

court asked Plaintiff to "be prepared to explain the legal basis" for its "single enterprise"

theory of liability); Oral Arg. 1:51:33-1:53:53.

     *Mozingo* offers some support for Plaintiff's theory.  In that case, the U.S. Court of

Appeals for the Fifth Circuit explains that two lines of cases have emerged in relation to

the "mere continuation" exception to the general rule of nonliability.  *Mozingo*, 752 F.2d

at 175.  Relevant here, one line of cases follows the "continuity of enterprise" theory,

and is considered an expansion of the mere continuation exception.  *Id.* (citing as

seminal cases *Cyr v. B. Offen & Co.*, 501 F.2d 1145 (1st Cir. 1974) and *Turner v.*

*Bituminous Cas. Co.*, 244 N.W.2d 873 (Mich. 1976)).[42]  The "continuity of enterprise"

theory considers the following factors:

> (1) retention of the same employees; (2) retention of the same supervisory
> personnel; (3) retention of the same production facilities in the same
> physical location; (4) production of the same product; (5) retention of the
> same name; (6) continuity of assets; (7) continuity of general business
> operations; and (8) whether the successor holds itself out as the
> continuation of the previous enterprise.

*Id.* (footnote citations omitted); *see also United States v. Carolina Transformer Co.*, 978

F.2d 832, 838 (4th Cir. 1992) (endorsing the continuity of enterprise theory of successor

---

[42] The other line of cases follows the "product line" theory adopted by the California
Supreme Court in *Ray v. Alad*.  *Mozingo*, 752 F.2d at 175.  "The product line theory is
based largely on the idea that the successor corporation is, like the predecessor, in a
position to assume the risk-spreading role assigned to the manufacturer of a product by
strict liability theory."  *Id.*   "[P]rinciples of fairness" provide an additional basis for the
"product line" theory: "a corporation which exploits the goodwill attached to a
predecessor's product [should] also bear the burdens attached to the product."  *Id.*
(citing *Ray*, 560 P.2d at 9).

liability in the context of CERCLA[43] violations); *Equal Rights Ctr v. Equity Residential*,
Civil No. CCB-06-1060, 2016 WL 1258418, at *5 (D. Md., 2016) (finding that the
continuity of enterprise theory of successor liability is relevant to assessing successor
liability pursuant to the Fair Housing Act).  *But see Atchison, Topeka and Santa Fe Ry.
Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 364 (9th Cir. 1997) (declining to adopt the
continuity of enterprise theory in the context of CERCLA violations because in cases in
which it has been applied, there is usually some fraudulent intent exposing the
purchaser to liability under the fraudulent transaction exception to the general rule of
nonliability).

### C. Material Facts Regarding Ng Branding's Status as Sterling's Successor are Disputed

Parties do not dispute that Ng Branding and Sterling had common shareholders,
directors/managers, officers, business departments, employees, manufacturers,
customers, company suites, equipment, and telephone numbers, and shared a
business address.  PSOF ¶¶ 8-9; Defs.' Resp. to PSOF ¶¶ 8-9.  However, there is no
record evidence that Ng Branding purchased Sterling, otherwise obtained Sterling's
assets, or to what extent, if any, the financial affairs of the companies overlapped.
Further, Parties dispute that Ng Branding carried on the same business as Sterling.
*See* Defs.' Resp. to PSOF ¶ 5 (denying the companies had the same scope of
business) (citing Ng's Ex. S, ECF No. 53-6 (letter authorizing Ng Branding to import

---

[43] CERCLA refers to the Comprehensive Environmental Response, Compensation, and
Liability Act.

"Robin's Jeans" footwear), and Ng Dep. 179:15-181:13, 186:2-23)).  In the absence of

undisputed evidence that a purchase or transfer of assets occurred, and that Ng

Branding carried on the same business as Sterling, the court cannot, at this time, hold

Ng Branding liable as Sterling's successor pursuant to the "mere continuation"

exception.  *See Bud Antle*, 758 F.2d at 1456; *Cleveland*, 147 Cal. Rptr. 3d at 781.[44]

Additionally, the court need not, for purposes of summary judgment, resolve the

applicability of the "continuity of enterprise" variant of the "mere continuation" exception.

*See Mozingo*, 752 F.2d at 175.  The court either lacks record evidence, or there are

disputes, about several of the factors pertinent to that inquiry.  *See id*.; *supra* pp. 30-

31.[45]  For these reasons, the Government is not entitled to summary judgment as to Ng

Branding's liability.

**VI.    Damages**

   **A.  Unpaid Duties**

In count one of the complaint, Plaintiff seeks to recover $1,666,824.85 in unpaid

duties, which consists of $2,003,080.12 in lost revenue minus the amount attributable to

---

[44] At oral argument, Plaintiff contended that Ng Branding affected Sterling's footwear entries.  Oral Arg. at 1:50:18-1:50:51.  Plaintiff further asserted that the HTS Lab Report demonstrates that Ng Branding, like Sterling, imported Ed Hardy footwear.  *Id.* at 1:53:15-1:53:43.  However, the precise scope of Ng Branding's imports, and whether, for example, Ng Branding also imported Robin's Jeans shoes, is unclear on the current record.

[45] For example, the court lacks information regarding whether Ng Branding (1) retained Sterling's "production facilities in the same physical location"; (2) produced "the same product"; (3) retained Sterling's assets; or (4) held itself out as Sterling's continuation. *See Mozingo*, 752 F.2d at 175.  There is no genuine dispute, however, that Ng Branding did not retain Sterling's name.  *See id*.; PSOF ¶ 3; Defs.' Resp. to PSOF ¶ 3; Ng's Ex. R.

CBP's approval of 17 of Sterling's protests, $336,255.27.  Compl. ¶¶ 45-47.   Plaintiff

acknowledges that the $100,000 paid by Sterling's surety should be subtracted from its

duty demand.  *Id.* ¶ 46; Pl.'s XMSJ at 3 n.1.

Section 1592 provides that CBP shall require the restoration of "lawful duties,

taxes, and fees" of which the United States may have been deprived as a result of a

violation of § 1592(a) "whether or not a monetary penalty is assessed." 19 U.S.C.

§ 1592(d).  Having determined that Sterling violated § 1592(a), the court will order

Sterling to pay the Government $1,566,824.85 in unpaid duties.  At this stage of the

proceedings, the presence of disputed facts precludes any finding as to Ng's or Ng

Branding's joint and several liability for those duties.

### B.  Civil Penalty

In count two of the complaint, Plaintiff seeks a $20,758,323.88 penalty for grossly

negligent conduct, i.e., four times the lost revenue,[46] which is less than the

$22,604,574.01 domestic value of the subject entries alleged in the complaint.  Compl.

¶ 53.[47]  Alternatively, on count three of the complaint, Plaintiff seeks a $10,379.161.94

---

[46] The total lost revenue consists of the sum of $3,186,500.85 in potential lost revenue
and $2,003,080.12 in actual lost revenue.  *See* Compl., Attach. A.  Four times the
resulting sum of $5,189,580.97 equals $20,758,323.88.

[47] At oral argument, the court asked the Government to substantiate its domestic value
calculation, which was not part of the summary judgment record.  Plaintiff referred the
court to Exhibit S to the Proposed Penalty Letter, and stated that the information
contained therein was all that was required to calculate the domestic value.  According
to Plaintiff, domestic value is calculated pursuant to regulation, 19 C.F.R. § 162.43, and
equals the sum of entered value, lost revenue, duty paid, and taxes and fees, multiplied
by 20%, which is the profit value applicable to footwear.  Plaintiff represented to the
court that the resulting figure is $31,659,670.10.  Oral Arg. 31:33-34:36.

penalty for negligent conduct, i.e., two times the lost revenue.  Compl. ¶ 59.  Based on

the court's determination that Sterling was grossly negligent, Plaintiff is eligible for a civil

penalty up to the statutory maximum of $20,758,323.88.  *See* 19 U.S.C. § 1592(c)(2).

The penalty determination is committed to the court's discretion, subject to

statutory maximums.  19 U.S.C. § 1592(c)(1); *Horizon Prods. Int'l*, 82 F. Supp. 3d at

1359.  The statutory maximum requested by Plaintiff is not, however, the "default

starting point" for the imposition of penalties, only to be adjusted downward when

evidence supports mitigation.  *See Optrex Am.*, 32 CIT at 641, 560 F. Supp. 2d at 1344

(citing *United States v. Modes, Inc.*, 17 CIT 627, 635, 826 F. Supp. 504, 512 (1993));

*United States v. Complex Mach. Works Co.*, 23 CIT 942, 946, 83 F. Supp. 2d 1307,

1312 (1999) ("[T]he law requires the court to begin its reasoning on a clean state. It

does not start from any presumption that the maximum penalty is the most appropriate

or that the penalty assessed or sought by the government has any special weight.")

(citation omitted).  Instead, the court determines the appropriate amount in light of the

---

In pertinent part, § 162.43 governs the appraisement of property for penalty assessment purposes.  19 C.F.R. § 162.43(b).  Subsection (a) defines "domestic value" as "the price at which such or similar property is freely offered for sale at the time and place of appraisement, in the same quantity or quantities as seized, and in the ordinary course of trade."  19 C.F.R. § 162.43(a).  Although Plaintiff's domestic value calculation makes sense in that it represents the sum of cost plus profit, the cited regulation does not expressly substantiate Plaintiff's method or its reliance on a 20% profit multiplier. *See id*.  Moreover, the court's calculation of domestic value based on the figures provided in Exhibit S multiplied by 20% results in a domestic value of $22,220,172.70, far less than the $31 million represented by Plaintiff at oral argument, and closer to, though not exactly, the value alleged in the complaint.  In any event, the court need not resolve the precise domestic value at this juncture because, as discussed, it will defer determining the amount of any civil penalty to be assessed.  Plaintiff will, however, need to confirm the domestic value calculation at the appropriate time.

totality of the evidence supporting a higher or lower penalty.  *Cf. Optrex Am.*, 32 CIT at

641-42, 560 F. Supp. 2d at 1344 (starting the "evaluation of the penalty amount at the

midpoint where it may be subject to upward or downward departure based on mitigating

and aggravating factors").  In the absence of legislative guidance, the court has

identified 14 non-exclusive factors that it may consider when determining the

appropriate penalty.  *Complex Mach. Works Co*., 23 CIT 942, 949–50, 83 F. Supp. 2d

1307, 1315 (1999); *see also Optrex Am.*, 32 CIT at 64-42, 560 F. Supp. 2d at 1342-44

(considering four of the fourteen factors).  The factors are:

> (1) the defendant's good faith effort to comply with the statute; (2) the
> defendant's degree of culpability; (3) the defendant's history of previous
> violations; (4) the nature of the public interest in ensuring compliance with
> the regulations involved; (5) the nature and circumstances of the violation
> at issue; (6) the gravity of the violation; (7) the defendant's ability to pay;
> (8) the appropriateness of the size of the penalty to the defendant's
> business and the effect of a penalty on the defendant's ability to continue
> doing business; (9) that the penalty not otherwise be shocking to the
> conscience of the [c]ourt; (10) the economic benefit gained by the
> defendant through the violation; (11) the degree of harm to the public; (12)
> the value of vindicating the agency authority; (13) whether the party
> sought to be protected by the statute had been adequately compensated
> for the harm; and (14) such other matters as justice may require.

*Complex Mach. Works Co*., 23 CIT at 949-50, 83 F. Supp. 2d at 1315.

Because the presence of disputed facts prevents this court from resolving Ng's

and Ng Branding's liability pursuant to § 1592(a), the court will defer determining the

amount of any penalty until all liable parties (whose conduct is relevant to the inquiry)

have been identified.  This way, Parties will also have an opportunity to fully brief the

*Complex Machine Works* factors, which will greatly inform the court's analysis.  *Cf.* Pl.'s

XMSJ at 18, 18-39 (alluding to the *Complex Machine Works* factors but not addressing

them).

### C. Prejudgment Interest

Plaintiff also seeks prejudgment interest on the unpaid duties pursuant to 19

U.S.C. § 1505.  Compl. at 11-12.  Section 1505 provides that delinquent "duties, fees,

and interest . . . bear interest by 30-day periods, at a rate determined by the Secretary,

from the date of liquidation or reliquidation until the full balance is paid."  19 U.S.C.

§ 1505(d).  Accordingly, the Government is entitled to delinquency interest pursuant to

§ 1505(d).

### CONCLUSION & ORDER

For the foregoing reasons, Ng's motion for summary judgment will be denied; the

Government's cross-motion for summary judgment against Ng will be denied; and the

Government's motion for summary judgment against Sterling and Ng Branding will be

granted in part as to Sterling's liability for gross negligence pursuant to 19 U.S.C.

§ 1592 and for unpaid duties and prejudgment interest, and denied in all other

respects.[48]   The court will defer its determination of the amount of any civil penalty until

Ng's and Ng Branding's liability is resolved at trial.   Accordingly, it is hereby

---

[48] USCIT Rule 54(b) permits the entry of partial judgment as to one of several claims when there "is no just reason for delay."  "Rule 54(b) requires finality—'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *United States v. Horizon Prods. Int'l, Inc.*, 39 CIT ___, ___, 91 F. Supp. 3d 1339, 1340 (2015) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).  Here, however, the court has not "ultimate[ly] dispos[ed]" of Plaintiff's claim for unpaid duties because it has not resolved Ng's and Ng Branding's liability for those duties.  Thus, entry of partial summary judgment is inappropriate at this time.  *See id.*

**ORDERED** that Defendant Alex Ryan Ng's motion for summary judgment (ECF Nos. 53, 96) is **DENIED**; it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment against Defendant Alex Ryan Ng and motion for summary judgment against Defendants Sterling Footwear, Inc., and Ng Branding, LLC (ECF No. 62), is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that Sterling Footwear, Inc. is liable to Plaintiff for $1,566,824.85 in unpaid duties lost by reason of grossly negligent violations of 19 U.S.C. § 1592, and a civil penalty, plus prejudgment interest pursuant to 19 U.S.C. § 1505; it is further

**ORDERED** that the court will defer its determination of the amount of any civil penalty until Alex Ryan Ng's and Ng Branding, LLC's liability is resolved at trial; and it is further

**ORDERED** that no later than November 30, 2017, Parties shall file, via CM/ECF, a proposed Pretrial Order, substantially in the form of Standard Chambers Form 1-1 (SCP 1-1), including all Schedules provided for therein.

**SO ORDERED.**


/s/      Mark A. Barnett
Mark A. Barnett, Judge

Dated: October 12, 2017
         New York, New York